H. C. DOUGLAS, et al., Appellants,

v.

Harmon D. WINKLE and Iwana
Sanderford, Appellees.

No. 8983.

Court of Appeals of Texas,
Texarkana.

Oct. 6, 1981.

H. C. Douglas, Mineola, for appellants.

Larry P. King, Quitman, John W. Alexander, Winnsboro, for appellees.

BLEIL, Justice.

Based on the jury's finding that the deceased did not execute the will offered, the trial court denied the application for its admission to probate. This appeal attacks rulings made on the admissibility of evidence, asserts error in the failure to submit a special charge, complains of a summary refusal to allow an attorney-party to act as a lawyer in the case, and presents evidentiary questions. We find no error and affirm the judgment.

H. C. Douglas, his brother and three sisters are appellants. They are the surviving brothers and sisters of Sally Winkle, deceased. She is also survived by her husband, Harmon Winkle, and a stepdaughter, Iwana Sanderford, appellees.

Sally Winkle died at the age of 82 years on January 5, 1980. Later that month H. C. Douglas filed an application to probate her will alleging the value of her estate to be $200,000. Harmon Winkle and his daughter filed a contest to that application urging that the first page of the will, which disposes of the decedent's estate, was removed and replaced with another after the will was executed.

Some matters were not disputed. All agreed that Ben Kerr, III, an attorney, prepared wills for Sally Winkle and Harmon Winkle and that these were executed in the attorney's office on July 10, 1974. These wills were witnessed by Barbara Allen and Carol Davis, Mr. Kerr's legal secretaries, whose signatures, along with those of the Winkles, were notarized by Mr. Kerr. The disagreement centers around whether the first page of the four-page document offered for probate was part of the will when it was executed. The will sought to be admitted to probate and the one which Mr. Kerr said was executed are identical except on page 1. On the will sought to be admitted the first page left her estate in a trust to her husband for life and on his death, the remainder to her brothers and sisters; in the will which Mr. Kerr said was executed, the remainder went to Iwana Sanderford. The jury, in a unanimous verdict, found that page 1 of the will offered for probate was not a part of the will at the time it was executed.

Kerr particularly remembered the Winkles' wills because this was one of the first instances in which he was called upon for estate planning after having moved his law practice from Dallas. They were referred to him in 1974 by Kenneth Williams, a certified public accountant in Quitman, because the estate was so substantial that tax planning was required to save on estate and inheritance taxes. Kerr prepared demonstrative charts to show the Winkles the tax differences which would result if they left their estate to each other outright as opposed to leaving everything in trust for the benefit of the survivor and upon the survivor's death, to Iwana Sanderford. Also, because Harmon Winkle was hard of hearing, he had to yell when he spoke to Mr. Winkle.

Mr. Kerr said that pages 2, 3 and 4 of the will offered were part of the will executed by Sally Winkle, but that page 1 was not. It was instead part of a draft of a revised will he had later prepared at the insistence of H. C. Douglas who told him that Mrs. Winkle was thinking of leaving her property to her brothers and sisters rather than to Iwana Sanderford. Mr. Douglas asked that the draft be typed on the same typewriter that had been used on the original will. The draft was taken from Kerr's law office when he was out. Thereafter he became concerned and expressed his fears of foul play to Kenneth Williams.

The four-page signed document bore the initials SW on each page. George Chaney, a document examiner, testified on behalf of the brothers and sisters that the initials as written on page 1 of the offered will were written by the same person who signed the will and initialed pages 2, 3 and 4. On cross-examination he conceded obvious differences. The type on page 1 was darker than on pages 2, 3 and 4, because page 1 was typed at a time different from the other pages and with a different, newer typewriter ribbon. Also, the space left for the initials was considerably smaller on page 1, than on pages 2, 3 and 4. On page 1 the typed initials appeared as SW, without periods following the initials, whereas on pages 2, 3 and 4 they were typed S. W., with periods. The initials, as they appear on the four-page document are as follows:

PAGE 1 SW   PAGE 2 S. W.   PAGE 3 S. W.   Page 4 S. W.

Among the exhibits introduced into evidence was the will of Harmon Winkle and the copy of an unexecuted draft of a will made in 1978 for Sally Winkle by her brother, H. C. Douglas, similar in substance to the will sought to be admitted to probate.

Appellants first complain that the trial court erred in refusing to admit testimony by several of them as to expressions of intent made by their sister. In about 1978, the deceased had told Nina Horton that she did not want Iwana Sanderford to have her property. On several occasions she told Mary Jane Benton that she wanted her brothers and sisters, not Iwana Sanderford, to have her property when she was gone. Mrs. Benton did not recall the dates of those statements. H. C. Douglas related that he was told a week to ten days before the wills were signed that his sister did not want Iwana to have everything she and her husband had, and asked her brother to tell Mr. Kerr that. Also excluded was testimony offered by Winkle from O. E. Bright, the Winkles' minister, Fay Urlich, a close friend, and Ben Kerr, to the effect that Sally Winkle had stated that she and her husband had left wills so that each would receive the other's property which later was to go to Iwana Sanderford. Mr. Kerr said he followed the Winkles' instructions in preparing their wills and that Sally Winkle wanted her estate to go to her husband for life and then to Iwana. Appellees make no complaint about the exclusion of this evidence.

■ It is correct that when the issue is whether a particular will is genuine, declarations of the testator made after the date of the will, stating what his past acts have been, are admissible. *Compton v. Dannenbauer*, 120 Tex. 14, 35 S.W.2d 682 (1931); 1A R. Ray, Texas Law of Evidence § 895 (Texas Practice 3d ed. 1980). Here, however, the excluded testimony offered by appellants amounted not to a declaration by Sally Winkle as to what her past acts had been, but amounted only to an expression of her wishes or desires.

■ In addition to declarations concerning past acts, expressions of intent have been admitted as an exception to the hearsay rule to prove or disprove testamentary capacity, revocation, undue influence, and fraud. *Scott v. Townsend*, 106 Tex. 322, 166 S.W. 1138 (1914); *Brown v. Mitchell*, 88 Tex. 350, 31 S.W. 621 (1895); 1A R. Ray,

Texas Law of Evidence § 895 (Texas Practice 3d ed. 1980). The testimony offered in this case does not fit in the exception to the hearsay rule for declarations of intention for the reason that it was not an expression of intent on the part of the testatrix.

■ We turn now to whether the testimony was admissible on another basis. Declarations of intention are frequently coupled with declarations expressing feelings such as ill-will, devotion, hostility to show forgery, incompetence, undue influence, and fraud. *Robinson v. Stuart*, 73 Tex. 267, 11 S.W. 275 (1889); *Johnson v. Brown*, 51 Tex. 65 (1879); *Scott v. Townsend*, supra; *Sockwell v. Sockwell*, 166 S.W. 1188 (Tex.Civ.App.—Texarkana 1914, writ ref'd). However, where declarations expressive of a mental state, be it intent or feeling, are made they must be close enough in time to the execution of the will to be admissible. The expression of wishes to Nina Horton was in 1978, and Mary Benton just could not say when her sister had expressed this to her. In order for this evidence to be admissible, there is the requirement of reasonable proximity in time. When the inadmissible shades into the admissible according to relative degrees of probative force, the line to be drawn between the admissible and the inadmissible is one which no two men would draw at exactly the same place. For this reason, rulings on the admission of this evidence should be left to the sound discretion of the trial judge. 1A R. Ray, Texas Law of Evidence § 896 (Texas Practice 3d ed. 1980). We find no abuse of discretion on the part of the trial court in the exclusion of this evidence.

■ The testimony of H. C. Douglas is different. What he testified to, out of the hearing of the jury, was properly admissible as an expression of feelings and intent made by the testatrix at or near the time the will was made. Any error in excluding this testimony, however, is harmless. This testimony concerned matters that H. C. Douglas had already testified to while relating a conversation he had with Mr. Kerr. No harm results when evidence is excluded

if other evidence of substantially the same nature had been admitted. *Rose v. O'Keefe*, 39 S.W.2d 877 (Tex.Com.App.1931, judgmt. adopted); 6 Tex.Jur.3d *Appellate Review* § 761 (1980).

In their second point of error appellants complain that the trial court improperly admitted testimony of Ben Kerr and Kenneth Williams concerning a conversation they had about Kerr's fear of foul play. They complain that the testimony improperly bolstered Kerr's testimony, and was irrelevant, immaterial, prejudicial and unsupported by the pleadings. It is helpful to address the testimony given by the two witnesses separately.

■ During the trial the appellants did object to certain testimony by Kerr concerning his conversations with Williams. The only stated basis for any objection was that the testimony was hearsay. In response to those objections, the trial court either requested the witness to refrain from going into hearsay or the question was rephrased or not answered. The trial court did not overrule any objection to this testimony. Since the record does not show that the trial court made an adverse ruling, the point cannot be considered on appeal. *City of Jacksonville v. Hill-Tex Communications*, 613 S.W.2d 76 (Tex.Civ.App.—Tyler 1981, no writ).

■ Appellants also complain that the testimony of Kenneth Williams concerning his conversation with Ben Kerr, after the making of the will, was erroneously admitted because it amounted to bolstering, was hearsay, and was irrelevant, immaterial and prejudicial. At the trial the only objections to this testimony were on the grounds of its being hearsay and of non-responsive answers being given. Objections not made to evidence at the time of trial are waived. *Del Monte Corporation v. Martin*, 574 S.W.2d 597 (Tex.Civ.App.—San Antonio 1978, no writ); *Eubanks v. Winn*, 469 S.W.2d 292 (Tex.Civ.App.—Houston [14th Dist.] 1971, writ ref'd n.r.e.); *Dobb v. Perry*, 145 S.W.2d 1103 (Tex.Civ.App.—Eastland 1940, no writ); 1 R. Ray, Texas Law of Evidence § 774 (Texas Practice 3d ed. 1980).

After the court overruled an objection to Mr. Williams' testimony on the grounds of "bolstering and hearsay," Williams related that he had seen Kerr after the execution of the wills about the Winkles' estate problems. Kerr came to Williams upset and concerned, and told him that he was afraid that the first page of the will, containing the beneficiary designation, had been changed. Kerr also told Williams that Douglas had requested that his office retype the first page of the will, and that Douglas had come to his office while he was absent and had taken that first page of the will. This testimony was admitted in rebuttal to certain testimony given by H. C. Douglas. Douglas had testified that Kerr had said he would and did change the will of Sally Winkle before it was executed. After Douglas had sought to discredit Kerr's testimony by evidence of facts indicating bias or suggestive of fabrication of testimony, Williams' testimony about Kerr's statements to him, made long before the death of Sally Winkle, was properly admitted. *Texas & N.O.R. Co. v. Petersilka*, 176 S.W. 70 (Tex.Civ.App.—San Antonio 1915, no writ); 1 R. Ray, Texas Law of Evidence § 774 (Texas Practice 3d ed. 1980). Further, this testimony was not hearsay. It was offered not to prove the truth of what Kerr had stated to Williams, but to prove the fact that the statements had been made. The objections made at the trial to the admissibility of Kenneth Williams' testimony were properly overruled.

■ Appellants also assert that the trial court erred in not submitting a special charge to the jury. They contend that the charge as a whole and the special issue submitted to the jury improperly placed the burden of proof in this case. At the trial the appellants requested no special charge and made no objections to the instructions or special issue submitted to the jury. Under our Rules, Tex.R.Civ.P. 272, 274, any objection they may have had to the manner of the submission of this case was waived by their failure to present it to the trial court in writing before the charge was read to the jury.

■ Appellant H. C. Douglas is a licensed attorney. At the trial, all appellants were represented by another attorney. On appeal complaint is made that the court erred in summarily refusing to allow H. C. Douglas to participate in the trial of the case as an attorney. The only references made to allowing H. C. Douglas to participate as an attorney in this case occurred before any evidence was presented, when it was suggested that H. C. Douglas might want to participate in closing arguments. The trial court indicated that it entertained some questions about the propriety of an attorney acting as such in a case in which he was a witness, but indicated that it would consider the matter of Douglas' being allowed to make an argument at the time of argument. No other reference is made to this matter. No objection or protest was made over the trial court's statement nor does it appear that H. C. Douglas ever requested to make an oral argument. Since there was no objection made at trial, this error cannot be raised for the first time on appeal. *City of Jacksonville v. Hill-Tex Communications,* supra; *Marek v. Baylor County,* 430 S.W.2d 220 (Tex.Civ.App.— Eastland 1968, writ ref'd n.r.e.); 4 Tex. Jur.3d *Appellate Review* § 99 (1980).

■ Evidentiary points are also raised by the appellants. We apply certain standards in our review of these points. In determining whether there is any evidence to support jury findings, we consider only the evidence and inferences favorable to it and disregard all other. *Rourke v. Garza,* 530 S.W.2d 794 (Tex.1975); *Sobel v. Jenkins,* 477 S.W.2d 863 (Tex.1972). Where there is conflicting evidence, the jury verdict on such matters is generally regarded as conclusive. *Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 204 S.W.2d 508 (1947); *Clark v. National Life & Accident Ins. Co.,* 145 Tex. 575, 200 S.W.2d 820 (1947). In determining whether evidence is insufficient or whether a finding is against the great weight and preponderance of the evidence, we consider and review all of the evidence, including that contrary to the findings. *Harrison v. Chesshir,* 159 Tex. 359, 320 S.W.2d 814 (1959); *In Re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1952). We have thoroughly considered and weighed all of the evidence. Our consideration of the evidentiary points raised leads us to conclude that there is evidence which is sufficient to support the verdict and that the verdict is not so against the great weight and preponderance of the evidence as to be manifestly unjust.

We overrule all of the appellants' points of error and affirm the judgment.