**FORT WORTH HOTEL LIMITED PARTNERSHIP d/b/a Fort Worth Hilton, Appellant,**

v.

**ENSERCH CORPORATION, d/b/a Lone Star Gas Company, Appellee.**

No. 2–96–046–CV.

Court of Appeals of Texas, Fort Worth.

July 27, 1998.

Gardere & Wynn, L.L.P., Joseph W. Spence, Dallas, for Appellant.

Holman, Hogan, Dubose & Townsend, Roger Townsend, Houston, Martin, Farr, Miller & Grau, Michael Miller, Dallas, Fill-mor & Harrington, H. Dustin Fillmore, Fort Worth, for Appellee.

Before LIVINGSTON, RICHARDS and HOLMAN, JJ.

## CORRECTED OPINION

LIVINGSTON, Justice.

### I. INTRODUCTION

The Court's March 5, 1998 opinion and judgment is withdrawn and this corrected opinion and judgment are substituted.[1] Appellant Fort Worth Hotel Limited Partnership d/b/a Fort Worth Hilton (Fort Worth Hilton) appeals from the jury's verdict in its suit against Enserch Corporation d/b/a Lone Star Gas Company (Lone Star Gas) arising out of a gas explosion that allegedly damaged its hotel. In nine points, Fort Worth Hilton contends: (1) the jury's failure to find gross negligence is wrong as a matter of law or is against the great weight and preponderance of the evidence and manifestly unjust; (2) the trial court abused its discretion by allowing the interjection of life safety issues into the trial; (3) the trial court abused its discretion in excluding Jack Gilbert's expert report and evidence of the bias of several experts called by Lone Star Gas; (4) the trial court abused its discretion by denying Fort Worth Hilton's motion for mistrial and new trial based on Lone Star Gas's counsel's intentional and repeated misconduct; (5) the jury's award of zero damages for business interruption and/or loss of income was erroneous as a matter of law or was against the great weight and preponderance of the evidence and violates the "zero damage" rule; and (6) the trial court erred in its calculation and award of prejudgment interest.

In three cross-points, Lone Star Gas alleges the trial court erred in overruling: (1) its motion to disregard the jury findings because Fort Worth Hilton presented no legally sufficient evidence that the reasonable cost of repairs in Tarrant County was $140,298.01; (2) its motion for sanctions because Fort Worth Hilton committed perjury regarding its relationship with several experts em-

---

1. TEX.R.APP. P. 19.3(a).

ployed by Travelers Insurance Company; and (3) its supplemental motion for sanctions because Fort Worth Hilton committed perjury regarding its claim for structural damage.

Because we find that Fort Worth Hilton failed to present evidence to show the reasonableness of repairs, we reverse the trial court's judgment and render a judgment that Fort Worth Hilton take nothing against Lone Star Gas.

## II. PRELIMINARY FACTUAL BACKGROUND

In 1986, the City of Fort Worth hired L.D. Conatser Construction Company (L.D.Conatser) to do some excavation work on a water main near the Frank Kent Cadillac Building (Cadillac Building) on the outskirts of downtown Fort Worth, Texas. L.D. Conatser provided Lone Star Gas with its proposed path of excavation and Lone Star Gas sent one of its line locators, J.P. Goldsmith, to identify and mark Lone Star Gas's existing gas lines before the excavation began. Two gas lines were present near the excavation site: (1) a plastic line that ran under Lancaster Avenue to the east end of the Cadillac Building (the east line); and (2) a steel line that ran under Lancaster Avenue to the west end of the Cadillac Building (the west line).

Lone Star Gas normally relied upon its master line map system to identify and mark gas lines. However, the relevant master map, map D–243,[2] did not portray the west line and, at trial, Goldsmith claimed to have remembered the whereabouts of the lines and marked them by memory without the help of the mapping system. Either way, Goldsmith failed to properly mark the west end line and L.D. Conatser encountered a gas line while working on the excavation project despite following its proposed path and the markings of Lone Star Gas. Lone Star Gas sent Goldsmith to the scene and he told L.D. Conatser it could continue on its proposed path after he determined the line did not contain any gas.

Then, at approximately 9:15 a.m. on March 16, 1986, L.D. Conatser's track-hoe snagged the west end line and pulled it from the ground despite following its proposed path and the markings of Lone Star Gas. Lone Star Gas dispatched one of its construction maintenance supervisors, W.C. Duebler, to the scene. However, Duebler stopped to have coffee with a co-worker before going to the site and, upon his arrival, he and his crew were unable to turn off the gas shutoff valve because it had been covered by asphalt and dirt and they did not have the correct tools to turn the valve. Meanwhile, gas from the ruptured line accumulated inside the Cadillac Building and, at 10:08 a.m., the Cadillac Building exploded.

The explosion sent a shockwave across Interstate 30 that blew out multiple windows in the north and south towers of Fort Worth Hilton and allegedly caused severe structural damage to the south tower of the hotel. Walker Harman, the president of Metro Hotels and part owner of Fort Worth Hilton, testified the blast: (1) caused multiple cracks in the south tower's vertical concrete columns; and (2) deflected the south tower's horizontal concrete slabs such that the floors were uneven, doors would not open, and the ceilings and walls were disjointed. The hotel remained open after the blast and some of the cosmetic damages were repaired. However, the extent of the structural damage was not immediately known and the south tower was closed down for the month of January 1987 to conduct tests on the alleged structural damage. Then, on January 8, 1988, the south tower was shut down for good on the advice of one of Fort Worth Hilton's structural engineers, James Mitchell. The entire hotel was foreclosed on September 6, 1988 and currently is operated by Ramada.

After the explosion, the owners of the Cadillac Building brought suit and obtained a judgment against Lone Star Gas in the 17th District Court of Tarrant County. *See Lone Star Gas v. F.F.F.Corp.*, No. 2–90–284–CV (Tex.App.—Fort Worth April 6, 1994, writ denied) (not designated for publication). The jury found that Lone Star Gas's negligence proximately caused the explosion. *See id.* Fort Worth Hilton filed suit against Lone

---

**2.** Lone Star Gas also claimed that another map, map F–6A, portrayed the west line.

Star Gas and L.D. Conatser[3] in 1988 and amended its petition after the decision in *F.F.F. Corp.* to ask for actual and punitive damages on grounds Lone Star Gas was collaterally estopped from contesting negligence as to the explosion.

Approximately seven years of prolonged discovery ensued, during which multiple, ancillary events occurred to shape the trial that was to come. Several events and revelations from this period are relevant for purposes of this appeal.

After the blast, Fort Worth Hilton, Lone Star Gas, L.D. Conatser, Travelers Insurance Company (Travelers)[4], and Metropolitan Life Insurance Company (Met Life)[5] all hired various structural engineering firms to inspect Fort Worth Hilton. During these respective investigations, which spanned a number of years, it was discovered that the south tower, which was completed in 1981, was not built to building code standards. Specifically, it was determined that the south tower had a deficient punching shear capacity, which meant the horizontal concrete floor slabs were susceptible to being punctured by the vertical concrete columns, a problem that could cause the slabs to deflect or collapse. Lone Star Gas seized on this information at trial, as well as the testimony of numerous former hotel employees, to argue the alleged structural damage was present before the explosion and was caused by the deficient design of the building.

Second, it was discovered that Travelers had suppressed an expert report by Jack Gilbert and hired new experts after Gilbert determined that the explosion had caused the structural damage to the hotel. Travelers apparently hired Gilbert soon after the blast, reviewed his unfavorable report (because coverage only extended to damage caused by the blast), then fired Gilbert and hired another group of experts (Travelers experts)[6] with the specific goal of gaining a determination that the structural damage predated the blast and therefore was not covered by the policy. Using the findings of the Travelers experts, Travelers contested coverage but agreed to enter into a December 29, 1987 litigation agreement with Fort Worth Hilton to pursue damages against Lone Star Gas while retaining Fort Worth Hilton's right to coverage under its policy for any structural damage caused by the blast. Fort Worth Hilton did not learn of Travelers' deception until years later when the Lone Star Gas case had stalled and Fort Worth Hilton and Travelers entered into arbitration to decide the coverage issue. The arbitrator found that the explosion had caused the structural damage and that the damage totaled over $4.5 million. Fort Worth Hilton sued Travelers for bad faith and later settled. None of this information was heard by the jury.

Meanwhile, in 1988, Lone Star Gas and L.D. Conatser learned of the existence of the Travelers experts and sought to discover their reports. Fort Worth Hilton moved for a protective order claiming the Travelers experts and their reports were privileged. This led to multiple motions and hearings on the discoverability of almost all experts involved in the case. In the end, the Travelers experts and numerous other experts were deemed discoverable and many testified at trial. Because of this ruling, Fort Worth Hilton filed, and the trial court granted, a motion in limine designed to prevent Lone Star Gas from commenting on the fact that the Travelers experts were hired by Fort Worth Hilton or its insurer.

During opening statements, Lone Star Gas named the various Travelers experts and told the jury they were not hired by Lone Star Gas, they did their studies before Lone Star Gas was sued, and they would testify that the damage pre-existed the blast. In an attempt to rebut any inferences gleaned from these statements, Fort Worth Hilton, which had not timely designated Gilbert as an expert

---

3. L.D. Conatser was non-suited in September 1990.

4. Travelers was Fort Worth Hilton's insurer.

5. Met Life held the note on Fort Worth Hilton, which totaled approximately $14 million.

6. These experts were: Ron Watkins, Brian Kendrick, and Jack Haston of Trinity Engineering; Robert Henry, Thomas Rowe, Tom Patty of Wiss, Janney & Elstner Associates, Inc.; Jack Rosenlund & Company; and Trinity Engineering (TETCO).

witness, attempted to have Walker Harman testify about the existence of Gilbert, his report, and the fact that Gilbert and the Travelers experts were hired by the same entity. Fort Worth Hilton also tried to introduce Gilbert's two reports into evidence. In light of the motion in limine and in order to avoid confusing the jury with the protracted Travelers coverage litigation, the trial court denied Fort Worth Hilton's proposed line of questioning and its request to introduce Gilbert's reports. However, it did allow Fort Worth Hilton to preserve Harman's testimony in a bill of exceptions.

In addition to the motion in limine regarding the Travelers experts, Fort Worth Hilton filed, and the trial court granted, motions in limine to prevent Lone Star Gas from commenting on: (1) the appropriateness of operating the hotel after the blast (referred to below as life safety issues); (2) MetLife's right to recover anything from the lawsuit; and (3) the fact that one of the head structural engineers who constructed the south tower, Rodney Black, had his license revoked. The trial court also ruled that certain factual findings from a governmental accident report were admissible but that the portions of the report dealing with probable cause were not admissible.

The trial began on June 19, 1995 and lasted until August 8, 1995. The two key issues were: (1) whether Lone Star Gas's failure to mark the gas line and adequately respond to the leak amounted to gross negligence; and (2) whether the alleged structural damage to the hotel pre-existed the explosion or was caused by the explosion. Concerning the gross negligence issue, Fort Worth Hilton provided evidence of an archaic mapping system, an inept gas line marking procedure, and an inadequate response to the gas leak. Lone Star Gas attempted to explain away its apparent negligence by arguing its actions did not really cause the damage to the hotel. Concerning the damages issues, Fort Worth Hilton argued the hotel had no serious structural problems before the explosion, had recently undergone a $1.8 million overhaul, and was effectively destroyed by the explosion. Lone Star Gas painted a picture of a defectively designed hotel with major structural damage whose owners were losing money and sought to capitalize on the explosion by blaming the pre-existing damage on the explosion.

The charge contained four questions and instructed the jury that "[i]n a prior lawsuit it was determined that Lone Star Gas Company was negligent, and that such negligence was a proximate cause of the natural gas explosion at Frank Kent Cadillac dealership on March 12, 1986." The jury answered the following three questions:

Question No. 1

Was the physical injury to the hotel that resulted from the explosion at Frank Kent Cadillac on March 12, 1986 "permanent" or "temporary"?

. . . .

Answer: Temporary

. . . .

Question No. 3

What sum of money, if paid now in cash, would fairly and reasonably compensate Hilton for its damages, if any, for the repairs to restore the Hilton resulting from the natural gas explosion in question?

. . . .

Answer in dollars and cents for damages, if any.

  a. cost of repairs $140,208.01

  b. loss of income $0

  c. loss of income due to interruption of hotel operations $0

Question No. 4

Did Lone Star Gas Company's negligence that proximately caused the explosion at Frank Kent Cadillac amount to gross negligence?

. . . .

Answer: No

## III. DISCUSSION

### A. The Jury's Failure to Find Gross Negligence

In its first point, Fort Worth Hilton contends the jury's failure to find gross negligence in question number four is erroneous as a matter of law or is against the great weight of the evidence. Lone Star Gas

contends Fort Worth Hilton waived error concerning the jury's failure to find gross negligence because it: (1) failed to brief the alternate issue of whether the jury failed to find that Lone Star Gas proximately caused the explosion; and (2) cannot rely on collateral estoppel because the jury in *F.F.F. Corp.* did not affirmatively find any of Fort Worth Hilton's specific allegations of negligence or gross negligence. We disagree.

■ We first address the causation issue. As stated above, the jury was instructed that Lone Star Gas was negligent and that its negligence was the proximate cause of the explosion at the Frank Kent Cadillac Building. Thus, the jury was not required to re-find ordinary negligence or causation on the part of Lone Star Gas. As a result, the jury was not required to make a new finding of causation in order to find, or not find, gross negligence. *See Costa v. Storm*, 682 S.W.2d 599, 603 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.) ("[r]egarding proximate cause, any negligence that caused injuries, and that also constitutes gross negligence, would also be the cause of the same injuries"). Where a jury or court has previously found that a tortfeasor was negligent and that the tortfeasor's negligence proximately cause an event, it is axiomatic that the issue of whether that tortfeasor's actions constituted gross negligence turns on the tortfeasor's mental state, not on a re-litigation of the proximate cause issue. *See Hall v. Stephenson*, 919 S.W.2d 454, 467–68 (Tex.App.—Fort Worth 1996, writ denied) (opining that "[w]hat lifts ordinary negligence into gross negligence is the defendant's subjective mental state" and "a finding of ordinary negligence is a prerequisite to a finding of gross negligence"); *Trevino v. Lightning Laydown, Inc.*, 782 S.W.2d 946, 949–50 (Tex. App.—Austin 1990, writ denied) (finding that gross negligence is merely a higher degree of negligence).

We find support for our position in the bifurcated, exemplary damages provision of the Texas Civil Practices and Remedies Code Annotated. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 41.009 (Vernon 1997). Under section 41.009, a case is separated into two parts; one to determine liability and the amount of actual damages and another to determine the amount of exemplary damages. *See id.; Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 30 (Tex.1994). In the second proceeding, the jury analyzes, among other things, the culpability of the tortfeasor. *See Moriel*, 879 S.W.2d at 30. It does not re-litigate the causation issue. *See id.* Although this case is slightly different because the jury was asked to determine whether Lone Star Gas was grossly negligent, we see no reason to require a party to re-introduce evidence on causation after the jury has already been told Lone Star Gas was negligent and the key issue was its culpability.

■ We turn to the application of collateral estoppel in this case. The doctrine of collateral estoppel or issue preclusion is designed to promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments by precluding the re-litigation of issues. *See Sysco Food Services, Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994). A party seeking to assert the bar of collateral estoppel must establish that: (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *See id.*

■ Lone Star Gas does not specifically challenge any of these collateral estoppel requirements. Instead, it contends collateral estoppel should not have been applied because the *F.F.F. Corp.* jury did not make any specific finding that a particular act or omission was negligent and a proximate cause of the explosion. However, it is undisputed that the *F.F.F. Corp.* jury found that Lone Star Gas's negligence proximately caused the explosion. Under our system of broad form submission of issues, it was not necessary for the trial court in *F.F.F. Corp.* to submit individual questions on the various allegations of negligence in order to obtain the verdict. *See Mobil Chemical Co. v. Bell*, 517 S.W.2d 245, 255–56 (Tex.1974) (approving submission of broad form negligence issues); *see also Lemos v. Montez*, 680 S.W.2d 798, 799–800 (Tex.1984) (detailing history of broad form submission). Moreover, the jury in the

case at hand was asked to find, or not find, gross negligence. It was not required to enunciate the reasons why it did or did not find gross negligence.

Fort Worth Hilton cites no case law for the proposition that a general finding of negligence should preclude the application of collateral estoppel. Nor do we believe the policies behind collateral estoppel would be served by narrowing the doctrine. Judicial efficiency would suffer if all negligence cases decided under broad form submission were denied collateral estoppel effect. Litigants who know of a case that will proceed before their own will be forced to pressure those in privity on a particular issue to use the more burdensome multi-issue submission format or risk having to re-try issues that have already been determined. Thus, we find: (1) Fort Worth Hilton did not waive the merits of its first point by failing to address the causation issue; and (2) application of collateral estoppel was appropriate in the case at hand.

We turn to the merits of Fort Worth Hilton's point. If an appellant is attacking the legal sufficiency of an adverse answer to a finding on which he had the burden of proof, the Texas Supreme Court has stated that the appellant must, as a matter of law, overcome two hurdles. *See Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 940 (Tex.1991). First, the record must be examined for evidence that supports the finding, while ignoring all evidence to the contrary. Second, if there is no evidence to support the fact finder's answer, then the entire record must be examined to see if the contrary proposition is established as a matter of law. *See id.; Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989).

■ In reviewing a point asserting that an answer is "against the great weight and preponderance" of the evidence, we must consider and weigh all of the evidence, both the evidence that tends to prove the existence of a vital fact as well as evidence that tends to disprove its existence. *See Ames v. Ames,* 776 S.W.2d 154, 158–59 (Tex.1989), *cert. denied,* 494 U.S. 1080, 110 S.Ct. 1809, 108 L.Ed.2d 939 (1990); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). So considering the evidence, if a finding is so contrary to the

great weight and preponderance of the evidence as to be manifestly unjust, the point should be sustained, regardless of whether there is some evidence to support it. *See Watson v. Prewitt,* 159 Tex. 305, 320 S.W.2d 815, 816 (1959); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

■ The test for gross negligence contains both an objective and a subjective prong. *See Moriel,* 879 S.W.2d at 21–22; *Wal–Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 326 (Tex.1993). Objectively, the defendant's conduct must create "an extreme degree of risk." *Moriel,* 879 S.W.2d at 22; *see Wal–Mart,* 868 S.W.2d at 326. This component, being a function of both the magnitude and the probability of the potential injury, is not satisfied if the defendant's conduct merely creates a remote possibility of serious injury; rather, the defendant's conduct must create the "likelihood of serious injury" to the plaintiff. *Moriel,* 879 S.W.2d at 22. Subjectively, the defendant "must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others." *Id.* at 23. Evidence of simple negligence will not suffice to prove either component of gross negligence. *See Wal–Mart,* 868 S.W.2d at 327.

■ Fort Worth Hilton contends the evidence clearly established that Lone Star Gas created an extreme degree of risk, had actual subjective awareness of the risk, and proceeded in conscious indifference to that risk. In support of its position, Fort Worth Hilton argues the evidence shows Lone Star Gas: (1) failed to maintain an accurate and updated map system detailing the whereabouts of its gas lines; (2) failed to correctly mark the west end line because it was not portrayed on map D–243; (3) told L.D. Conatser to continue its excavation after it struck an old gas line on the same project; (4) failed to adequately train employees to do their job and to respond to an emergency; (5) failed to adequately respond to the gas leak in that Duebler went for coffee before going to the scene; (6) allowed the manhole and shutoff valve for the west end line to be covered with asphalt and dirt and did not have the correct

tools to shut off the valve; and (7) neglected to take any steps to assess or correct its emergency response system after several governmental agencies condemned their performance before and during the incident.

Lone Star Gas contends Fort Worth Hilton failed to prove that: (1) there was a likelihood of serious injury or that there was an extreme risk of harm; (2) Lone Star Gas was grossly negligent in maintaining accurate maps; (3) Lone Star Gas's response to the gas leak was grossly negligent; and (4) Lone Star Gas's management was actually aware of and consciously indifferent to an extreme risk of serious harm. We agree.

We have reviewed the evidence supporting the jury's finding of no gross negligence and find that Fort Worth Hilton failed to prove that Lone Star Gas was grossly negligent as a matter of law. We find there is sufficient evidence that Lone Star Gas did not consciously ignore an extreme risk that would likely cause injury to Fort Worth Hilton. Fort Worth Hilton provides a detailed account of the evidence that it alleges conclusively established that Lone Star Gas was grossly negligent. However, we look only to the evidence that supports the jury's finding and there is ample evidence that: (1) the mapping system, although antiquated, was not so deficient or unusable so as to constitute gross negligence as a matter of law; (2) Goldsmith's failure to use the mapping system to mark the west line, and Lone Star Gas's apparent failure to have the west line marked on the appropriate map, was negligent but not so egregious as to constitute gross negligence in light of testimony that the west end line was on a map provided to L.D. Conatser and that Goldsmith marked a portion of the line; (3) the lack of formal training received by Goldsmith and Laboy Sotomayer, Lone Star Gas's map maker, was not gross negligence in light of the hands-on training they received; and (4) Duebler's response to and actions during the incident were not so flagrant so as to constitute gross negligence in light of the testimony that he stopped to have coffee with a former employee who was more knowledgeable about the gas lines in the area of the gas leak and there are thousands of valves in the area.

Moreover, Lone Star Gas's actions after the explosion are irrelevant to the determination of whether it was grossly negligent in causing the explosion.

We have also reviewed the evidence in its entirety and find the jury's finding of no gross negligence was not against the great weight and preponderance of the evidence or manifestly unjust. An appellate court need not give details of supporting evidence when upholding factual sufficiency of the evidence underlying the trial court's judgment. *See Ellis County State Bank v. Keever,* 888 S.W.2d 790, 794 (Tex.1994). However, we note that both sides presented numerous expert witnesses, fact witnesses, and exhibits that painted two very different, irreconcilable accounts of the severity and egregiousness of Lone Star Gas's actions. The parties were equally divergent on the issues of pre-blast damage and the propriety of Fort Worth Hilton's actions. Thus, we believe it was within the jury's province to weigh all of the conflicting evidence that portrayed both parties in two drastically different lights. *See Wal–Mart Stores, Inc. v. Gonzalez,* 954 S.W.2d 777, 781 (Tex.App.—San Antonio 1997, n.w.h.); *Jim Walter Homes, Inc. v. Castillo,* 616 S.W.2d 630, 634 (Tex.Civ.App.—Corpus Christi 1981, no writ).

We will not disturb a jury's finding where almost every piece of evidence tending to support either account was picked apart and contradicted by the other side. *See Gonzalez,* 954 S.W.2d at 781. Moreover, Fort Worth Hilton fails to cite, and we have not found, a single case since *Moriel* where an appellate court has sustained a point in which a party with the burden of proof claimed the jury erroneously failed to find gross negligence. We overrule Fort Worth Hilton's first point.

## B. Introduction of Life Safety Issues

In its second and third points, Fort Worth Hilton complains that the trial court erred in allowing Lone Star Gas to repeatedly ask questions concerning the safety risks of operating the hotel after the blast because: (1) the court granted Fort Worth Hilton's motion in limine on the issue; (2) the issue was irrelevant and highly prejudicial; and (3)

Lone Star Gas pursued this line of questioning solely to portray Fort Worth Hilton and its president, Walker Harman, as greedy and unconcerned about the safety of the hotel's patrons.

Lone Star Gas contends Fort Worth Hilton failed to preserve any error concerning the "life-safety" issue because it did not object to the mention of the topic during opening statements and only sporadically objected to it during trial. In the alternative, Lone Star Gas alleges the "life-safety" issue was relevant and probative because: (1) the jury was asked to decide whether the hotel's damage was caused by the explosion or by prior structural deficiencies; (2) Fort Worth Hilton invited an attack of Mr. Harman during opening arguments; (3) it was necessary to impeach Mr. Harman; and (4) it was directly relevant to the severity of damages.

We first address the issue of whether Fort Worth Hilton preserved error. To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion. *See* TEX.R.APP. P. 33.1(a); *see also* TEX.R. CIV. EVID. 103(a)(1). If a party fails to do this, error is not preserved, and the complaint is waived. *See Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex.1991) (op. on reh'g). An objection must be made immediately after the statement is made or the error is waived. *See Miller v. Bock Laundry Mach. Co.*, 568 S.W.2d 648, 653 (Tex.1977); *Williams v. Lavender*, 797 S.W.2d 410, 413–14 (Tex.App.—Fort Worth 1990, writ denied).

The record reveals Lone Star Gas first alluded to life safety issues during its opening statement on June 21, 1995. Fort Worth Hilton did not object to these statements when they were made. Nor did it raise this issue when it moved for mistrial after the conclusion of opening statements. However, the trial court did not grant Fort Worth Hilton's motion in limine regarding the introduction of life safety issues until July 5, 1995. Thereafter, on July 11, Lone Star Gas raised the life safety issue during its cross-examination of James Mitchell, one of the hotel's structural engineers, and Fort Worth Hilton timely objected to this line of questioning on the ground that it was in violation of the motion in limine, irrelevant, and prejudicial. The trial court overruled the objections on the ground Mitchell opened the door to the questions by testifying at trial that it was not dangerous to continue operating the hotel after the explosion despite previously contending in his deposition and in a letter[7] written to the city that it was dangerous to continue operating the hotel after the blast.

The trial court then declared that it would treat each life safety issue separately when it came up. The issue came up again the next day and Fort Worth Hilton objected and moved for a mistrial. The trial court denied the motion for mistrial and, later, allowed Lone Star Gas to introduce life safety issues for purposes of impeachment against two other witnesses, Walker Harman and James Notch.

Lone Star Gas cites *Douglas v. Winkle*, 623 S.W.2d 764, 767–68 (Tex.App.—Texarkana 1981, no writ), for the proposition that Fort Worth Hilton waived any error when it did not object when the issues were first brought up during opening statements. However, *Douglas* dealt with prior *testimony* and held that failure to object to the introduction of *evidence* can preclude an objection when similar *evidence* is introduced later on during trial. *See Id.* (emphasis added). Here, the alleged prior "evidence" came during opening statements. Opening statements are not evidence. *See Carrasco v. Texas Transp. Inst.*, 908 S.W.2d 575, 580 (Tex. App.—Waco 1995, no writ); *Border Apparel–East, Inc. v. Guadian*, 868 S.W.2d 894, 898 n. 6 (Tex. App.—El Paso 1993, no writ). Therefore, appellant did not waive error when he failed to object to the introduction of life safety issues during opening statements.

---

7. In 1992, Mitchell, James Notch and Walter Moore wrote a letter to the city after they learned the hotel's new owners were seeking a permit to reopen the south tower. The letter opined that "the re-opening of this tower in its present condition may result in endangerment of the lives, safety, health and welfare of the general public."

Lone Star Gas cites *Winkel v. Hankins,* 585 S.W.2d 889, 894 (Tex.Civ.App.—Eastland 1979, writ dism'd), for the proposition that failure to continually assert a previously ruled upon objection will waive the initial objection. We agree that waiver can occur in such circumstances. However, Lone Star Gas fails to point out where Fort Worth Hilton failed to object to the introduction of the life safety issues and our review of the record as it relates to Fort Worth Hilton's point shows it sufficiently preserved error in relation to the life safety issue being raised during the testimony of Mitchell, Notch, and Harman.

We turn to the merits of Fort Worth Hilton's points. The admission or exclusion of evidence is left to the trial court's sound discretion. *See City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995). A trial court's refusal to grant a motion for mistrial is reviewed under an abuse of discretion standard. *See Century 21 Real Estate Corp. v. Hometown Real Estate Co.,* 890 S.W.2d 118, 131 (Tex.App.—Texarkana 1994, writ denied). To determine whether a trial court abused its discretion, we must decide "whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990); *see Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

◾ Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court in a similar circumstance does not demonstrate that an abuse of discretion occurred. *See Downer,* 701 S.W.2d at 241–42. An abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence. *See Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978); *Kirkpatrick v. Memorial Hosp. of Garland,* 862 S.W.2d 762, 776 (Tex. App.—Dallas 1993, writ denied). Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision. *See Holley v. Holley,* 864

S.W.2d 703, 706 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

◾ We begin by addressing Lone Star Gas's disregard for the motion in limine. A motion in limine is a procedural device that permits a party to identify, before trial, certain evidentiary rulings that the court may be asked to make. *See Hartford Accident & Indem. Co. v. McCardell,* 369 S.W.2d 331, 335 (Tex.1963). The purpose of a motion in limine is to prevent the other party from asking prejudicial questions and introducing prejudicial evidence in front of the jury without first asking the court's permission. *Id.* The trial court's ruling on a motion in limine is not a ruling that excludes or admits evidence; it is merely a tentative ruling that prohibits a party from asking a certain question or offering certain evidence in front of the jury without first approaching the bench for a ruling. *See Chavis v. Director,* 924 S.W.2d 439, 446 (Tex.App.—Beaumont 1996, no writ). When a trial court's order on a motion in limine is violated, we review the violation to see if it is curable by instructions to the jury to disregard it. *See Dove v. Director, State Employees Workers' Compensation Div.,* 857 S.W.2d 577, 580 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

As we have already noted, the motion in limine was not granted until a week into trial and the trial court stated it would determine the admissibility each time the issue was raised. While it is true Lone Star Gas did not approach the bench before introducing Mitchell's letter, we find the timing of the motion and the overall circumstances of the case, when combined with the seemingly contradictory stances put forth by both sides on this issue, reveal this to be an issue that should be left to the sound discretion of the trial court. *See Davis,* 571 S.W.2d at 862; *Kirkpatrick,* 862 S.W.2d at 776; *see also Holley,* 864 S.W.2d at 706. Thus, we find the trial court did not abuse its discretion as to Lone Star Gas's actions concerning the motion in limine.

We turn to the merits of Fort Worth Hilton's points. Relevant evidence is that which has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less

probable than it would be without the evidence. *See* TEX.R. CIV. EVID. 401. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. TEX.R. CIV. EVID. 403. Unfair prejudice has been defined as "an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one." *Turner v. PV Int'l Corp.*, 765 S.W.2d 455, 471 (Tex.App.—Dallas 1988), *writ denied per curiam*, 778 S.W.2d 865 (1989).

■■■ We find that the proffered evidence was relevant, necessary for impeachment, and not unfairly prejudicial. Both sides admit that fact issues were raised as to whether: (1) the hotel's damage was caused by the explosion or by structural deficiencies; (2) the damage was temporary and repairable or permanent and irreparable; and (3) Fort Worth Hilton had knowledge of the damage before the explosion. Another fact issue surfaced during trial; whether the building was safe for occupants before and after the blast.

Fort Worth Hilton contends the propriety of operating the hotel after the blast was irrelevant. However, the jury was asked to determine the value of the hotel after the explosion and the value would surely be affected if the hotel was dangerous in its post-blast condition. Moreover, Lone Star Gas's case was based on the dual premise that the hotel was damaged before the blast and that money was Harman's primary concern. Thus, if the jury was to believe Lone Star Gas's account, the hotel was dangerous before and after the blast and the value of the hotel before and after the blast would differ. Also, Walker Harman and James Mitchell testified the hotel was irreparable but that it was still operable in its damaged condition yet Mitchell previously co-authored the letter to the City that outlined the dangers of operating the hotel. Thus, not only was the life safety issue directly relevant to the issue of damages, it was also relevant for impeachment purposes of Mitchell and Harman.

■■■ Fort Worth Hilton contends the evidence, even if relevant, should have been excluded because it was unfairly prejudicial. While the evidence is prejudicial, we do not think it is unfairly prejudicial. *See John Deere Co. v. May*, 773 S.W.2d 369, 373 (Tex. App.—Waco 1989, writ denied) (stating that not all prejudicial evidence is unfairly prejudicial). First, Lone Star Gas's entire case was designed to destroy the credibility of Walker Harman. The life safety issue was merely one of many tactics used to show Walker Harman had a reason to blame the damage on the blast. Second, Fort Worth Hilton opened the door to an attack on Walker Harman's credibility during opening statements by alluding to the fact that Lone Star Gas would call him a fraud. *See McInnes v. Yamaha Motor Corp.*, 673 S.W.2d 185, 187–88 (Tex.1984) (finding that a party that invites testimony cannot complain when it is offered). Third, it is only fair that Lone Star Gas be able to impeach Mitchell with the letter when Mitchell was such an integral part of Fort Worth Hilton's case. Thus, we find the trial court did not abuse its discretion in admitting evidence on life safety issues and in denying Fort Worth Hilton's motion for mistrial. We overrule Fort Worth Hilton's second and third points.

### C. Jack Gilbert and the Travelers Experts

In its fourth and fifth points, Fort Worth Hilton complains the trial court abused its discretion by excluding Jack Gilbert's report and testimony and by denying it the opportunity to present evidence of bias on the part of the Travelers experts after Lone Star Gas characterized them as "independent." Specifically, Fort Worth Hilton contends the trial court erred in excluding Jack Gilbert's expert report and testimony because: (1) they were offered to rebut the implication that the Travelers experts were independent; (2) Gilbert was timely designated; and (3) good cause existed to admit the report and testimony if he was untimely designated. In addition, Fort Worth Hilton claims Walker Harman should have been allowed to testify that: (1) Travelers hired Jack Gilbert; (2) Gilbert prepared two reports concerning the structural damage caused by the blast; and

(3) Travelers later hired the Travelers experts and did not show them Gilbert's reports.

Lone Star Gas contends: (1) any evidence on the bias of the Travelers experts was irrelevant because it never claimed the experts belonged to Fort Worth Hilton; (2) Fort Worth Hilton was judicially estopped from showing bias on the part of the Travelers experts because of its pre-trial contention that it was not adverse to Travelers; (3) Fort Worth Hilton repeatedly "invited" the trial court to exclude evidence of the Travelers experts; and (4) Fort Worth Hilton failed to preserve error because its offer of proof was deficient. Lone Star Gas also claims Gilbert's testimony and report were properly excluded because he was designated as an expert after the deadline set in the trial court's pre-trial order and good cause was not shown. We find: (1) Lone Star Gas did not violate the motion in limine and open the door to the introduction of Harman's testimony and Gilbert's report; (2) Fort Worth Hilton failed to properly designate Jack Gilbert as an expert and failed to show good cause for the failure; and (3) the trial court did not err in denying introduction of Gilbert's reports and Harman's testimony in light of the circumstances of the case.

■ We first address whether Fort Worth Hilton should have been able to show bias on the part of the Travelers experts using Harman's testimony and Gilbert's reports in light of Lone Star Gas's actions during opening statements. The trial court granted Fort Worth Hilton's motion in limine covering "[a]ny characterization of [the Travelers experts] as belonging to, being retained by or having been assigned to the Plaintiffs by Travelers (or any such similar characterization)." During opening, Lone Star Gas intentionally avoided any overt statement that the Travelers experts were retained by Fort Worth Hilton. Instead, Lone Star Gas told the jury that it did not hire the Travelers experts. Although this tactic skirts the boundaries of the motion in limine, it was permissible under the literal wording of the motion because it dealt only with Lone Star Gas's relationship to the Travelers experts, not Fort Worth Hilton's relationship. Fort Worth Hilton could have sought a motion in limine to keep Lone Star Gas from disavowing the Travelers experts but it did not do so.

■ Thus, Fort Worth Hilton's contentions lack merit because the motion in limine was not violated. In addition, we find that the timing and substance of Fort Worth Hilton's proposed actions reveal the trial court ruled properly in denying Harman's testimony and Gilbert's reports. First, Fort Worth Hilton sought to impeach witnesses who had not yet taken the stand and introduce a person, Gilbert, that the jury had not heard of and would not hear from. This would undoubtedly confuse the jury. Second, in order to impeach these witnesses, Fort Worth Hilton would have had to violate its own motion in limine and introduce insurance and the entire Travelers litigation into the case. Fort Worth Hilton acknowledged this dilemma and sought to avoid it by tempering its offer of proof in such a way as would only give the jury a hint of Travelers role in the case. Again, this hint would only confuse the jury and further complicate prior and future evidentiary rulings. Thus, it was within the discretion of the trial court to deny Fort Worth Hilton the opportunity to delve into these issues.

■ Fort Worth Hilton also claims the trial court erred because Gilbert was timely designated or, in the alternative, Fort Worth Hilton established good cause for any untimely designation. We disagree. The record reveals Gilbert was not timely designated as an expert pursuant to the trial court's pre-trial discovery order. *See* Tex.R. Civ. P. 166b(6)(b) (allowing trial court to modify deadlines for supplementation of discovery). Fort Worth Hilton brought up Gilbert for the first time in connection with impeachment of the Travelers experts. Only after the trial court inferred it would not allow Gilbert's reports in for impeachment purposes did Fort Worth Hilton claim timely designation or good cause for the untimely designation as an alternative basis for the admissibility of the reports.

Texas Rule of Civil Procedure 166b(6)(b) states:

If the party expects to call an expert witness when the identity or the subject matter of such expert witness' testimony has not been previously disclosed in response to an appropriate inquiry directly addressed to these matters, such response must be supplemented to include the name, address and telephone number of the expert witness and the substance of the testimony concerning which the expert witness is expected to testify, as soon as is practical, but in no event less than thirty (30) days prior to the beginning of trial except on leave of court.

TEX.R. CIV. P. 166b(6)(b).

However, as stated above, the trial court can modify the 30 day deadline. *See id.* If a party fails to comply with the rules or orders on supplementation, the evidence is excluded unless good cause is shown. *See* TEX.R. CIV. P. 215(5). A trial court has discretion to determine whether the offering party demonstrated good cause for failing to supplement. *See Aluminum Co. of Am. v. Bullock,* 870 S.W.2d 2, 3 (Tex.1994) Thus, we ask whether the trial court's ruling was arbitrary and unreasonable, and made without any reference to any guiding rules or principles. *See id.* Factors in the determination of whether good cause has been shown include: (1) inadvertence of counsel; (2) lack of surprise, unfairness, or ambush; (3) uniqueness of the excluded evidence; and (4) the fact that a witness has been deposed. *See Alvarado v. Farah Mfg. Co.,* 830 S.W.2d 911, 915 (Tex. 1992).

Having read the record and understanding the circumstances of the case, it appears Fort Worth Hilton's failure to timely designate Gilbert as an expert witness had more to do with discovery tactics than inadvertence of counsel or any of the other factors that would warrant a finding of good cause. Moreover, the evidence of good cause presented at trial was thoroughly refuted by Lone Star Gas and new arguments raised on appeal should not be considered. *See Bott v. Bott,* 962 S.W.2d 626, 628–29 (Tex.App.— Houston [14th Dist.] 1997, n.w.h.). Thus, the trial court did not abuse its discretion in denying Gilbert's reports into evidence. We

overrule Fort Worth Hilton's fourth and fifth points.

**D. Unethical Conduct and Sanctions**

■ In its sixth point, Fort Worth Hilton contends the trial court abused its discretion in denying its motion for mistrial because Lone Star Gas's trial counsel deliberately utilized unethical and unprofessional tactics to unfairly prejudice the jury. Specifically, Fort Worth Hilton contends Lone Star Gas's counsel: (1) intentionally misled the jury by inferring that MetLife chose not to sue because it determined that the suit was without merit; (2) improperly implied that an inadmissible portion of a government report on the explosion was favorable to his client by asking the court, in front of the jury, to explain to the jury why the portion of the report was inadmissible; (3) improperly asked, in disregard of an order in limine, whether a structural engineer who had worked on the south tower had lost his license; (4) deliberately raised life-safety issues despite an order in limine; (5) made improper "jury speech" objections; (6) "whispered" to co-counsel in a way that the jury could hear what they were saying; and (7) badgered and belittled several witnesses during cross-examination. Lone Star Gas asserts: (1) Fort Worth Hilton failed to timely or properly object to the bulk of the alleged infractions; and (2) the cumulative effect of Lone Star Gas's counsel's actions do not amount to reversible error. We find the cumulative effect of Lone Star Gas's counsel's actions do not amount to reversible error.

Texas Rule of Appellate Procedure 44.1(a) states:

No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of:

(1) probably caused the rendition of an improper judgment; or

(2) probably prevented the appellant from properly presenting the case to the court of appeals.

TEX.R.APP. P. 44.1(a).

We have reviewed Fort Worth Hilton's specific allegations and the entire record as a

whole and are of the determination that Lone Star Gas's counsel's actions did not "cause[ ] the rendition of an improper judgment." TEX.R.APP. P. 44.1(a)(1); *Dixon v. Van Waters & Rogers*, 674 S.W.2d 479, 484 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e.) (finding no cumulative error). We acknowledge that Lone Star Gas's counsel repeatedly pushed the envelope of zealous advocacy throughout the trial. We have no doubt Lone Star Gas's counsel's adherence to certain motions in limine was questionable, his numerous sidebar comments were antagonistic in nature, and his assault on Walker Harman was unrelenting.

However, the trial did not take place in a vacuum and, in the continuum of this prolonged and hotly contested litigation, we cannot say that his actions resulted in an improper judgment. The jury was inundated for seven weeks with highly technical, and inherently contradictory, accounts of the merits of the suit. Intermittent with the testimony and evidence, Lone Star Gas's counsel made numerous, subtle jabs at Walker Harman, Fort Worth Hilton, and its witnesses. While the jury may have noticed some of Lone Star Gas's counsel's tactics, the vast majority of his comments were made outside the presence of the jury during arguments on the various objections and motions for mistrial.

As for Fort Worth Hilton's primary complaint, the conduct relating to the motions in limine, we believe any acts or omissions were tempered in that: (1) Lone Star Gas's counsel's actions seemed designed to follow the letter if not the spirit of the court's rulings; (2) the trial court intentionally left open many of its ruling to adapt to the ebb and flow of the trial; and (3) the substance and timing of many of Fort Worth Hilton's objections were deficient. As such, we do not believe: (1) the trial court abused its discretion in denying Fort Worth Hilton's motion for mistrial; or (2) the jury was so affected so as to render an improper verdict. We overrule Fort Worth Hilton's sixth point.

Lone Star Gas's second and third cross-points complain the trial court erred in overruling: (1) its motion for sanctions because Fort Worth Hilton committed perjury regarding its relationship with several experts employed by Travelers Insurance Company; and (2) its supplemental motion for sanctions because Fort Worth Hilton committed perjury regarding its claim for structural damage. We have reviewed the record and find the trial court did not err in denying either of Lone Star Gas's motions for sanctions.

As to the first motion for sanctions, we acknowledge that Fort Worth Hilton took mutually exclusive stances on the adversarial versus privileged nature of the Travelers experts during the course of the case. However, these contradictory positions must be reviewed in the context of the entire litigation process and in light of Fort Worth Hilton's ancillary action against Travelers, which has been discussed in detail above. In light of Traveler's deception, Fort Worth Hilton's dual stances, while questionable, do not stray from the realm of zealous advocacy and do not amount to perjury. We overrule Lone Star Gas's second cross-point.

As to the second motion for sanctions, we find that ample testimony was admitted to support the positions taken by both sides concerning the cause of the structural damage. That the jury believed Lone Star Gas's account does not mean Fort Worth Hilton and its witnesses perjured themselves and should have been sanctioned. We overrule Lone Star Gas's third cross-point.

### E. Damages

In its seventh and eighth points, Fort Worth Hilton contends the jury's award of zero damages for loss of income under question 3(b) and loss of income due to business interruption under 3(c): (1) was erroneous as a matter of law or was against the great weight and preponderance of the evidence; and (2) violates the "zero damage" rule. Specifically, Fort Worth Hilton asserts it proved up: (1) business interruption loss damages of $109,000 suffered immediately after the blast in March 1986; (2) business interruption/loss of revenue damages of $129,000 suffered during January 1987 when tests were being performed in the south tower; and (3) loss of income damages of $176,-

349 per month suffered from January 1988 to September 1988 during the time the south tower was shut down before the hotel was foreclosed.

Lone Star Gas contends: (1) Fort Worth Hilton failed to brief the issue of causation on appeal; (2) it was within the jury's discretion to find a lack of causation between the blast and the damages asserted; (3) Fort Worth Hilton submitted the wrong measure of damages; and (4) Fort Worth Hilton failed to prove loss of income and business interruption. We find: (1) Fort Worth Hilton failed to sufficiently prove business interruption loss during March 1986; and (2) it was within the jury's discretion to find a lack of causation between the blast and the damages asserted concerning January 1987 and the January 1988 to September 1988 time period.

▮▮ Fort Worth Hilton claims it proved business interruption damage of $109,000 during March 1986. However, the only testimony as to this amount came from Rex Stewart, the former vice president of finance at Metro Hotels, who apparently came to this figure by reading a report made by Lone Star Gas's expert David Nieses. Nieses did not testify at trial and his report was not entered into evidence. Thus, the jury simply heard Stewart agree to a number reached by someone else. Stewart never told the jury why $109,000 was reasonable, what it accounted for, or how the figure was reached. Walker Harman testified to possible lost bookings and early departures but these events were never linked to the $109,000 figure and the jury apparently took little stock in anything Harman said. Thus, we have a situation where it seems possible that some reservations were canceled and some guests departed but no concrete evidence of such events was presented.

Moreover, during closing, Fort Worth Hilton combined the three time periods and blithely asserted that "the answer to part B should be a $1,410,792" and "the answer to [q]uestion 3C should be a $1,649,373." Essentially, Fort Worth Hilton told the jury to plug numbers into the charge without being given viable reasons to do so. Therefore, we find the jury's answer of "$0" damages was not erroneous as a matter of law or against the great weight and preponderance of the evidence as it related to the period of March 1986.

▮▮ We turn to the last two time periods, January 1987 and January 1988 to September 1988. As stated above, the record reveals the jury heard ample testimony that the blast did not cause the structural damage to the hotel and that Fort Worth Hilton knew of the damage before the blast. As a result, it was within the province of the jury to find that any losses due to testing and the eventual closing of the hotel occurred as a result of the deficient construction of the hotel, not the blast. *See Gonzalez*, 954 S.W.2d at 781; *Castillo*, 616 S.W.2d at 634. Thus, the jury's answer of "$0" damages was not erroneous as a matter of law or against the great weight and preponderance of the evidence. We overrule Fort Worth Hilton's seventh and eighth points.

▮▮ We turn to Lone Star Gas's first cross-point. Lone Star Gas asserts the trial court erred in overruling its motion to disregard the jury findings because Fort Worth Hilton presented no legally sufficient evidence that the reasonable cost of repairs in Tarrant County was $140,298.01. We agree. A party seeking recovery for the cost of repairs must prove their reasonable value. *See, e.g., Ebby Halliday Real Estate, Inc. v. Murnan*, 916 S.W.2d 585, 589 (Tex.App.— Fort Worth 1996, writ denied); *GATX Tank Erection Corp. v. Tesoro Petroleum Corp.*, 693 S.W.2d 617, 619 (Tex.App.—San Antonio 1985, writ ref'd. n.r.e.) (stating "[i]t is incumbent upon the parties seeking recovery for the cost of repairs to prove the reasonable value of such repairs"). Ordinarily, to establish the right to recover costs of repairs, it is not necessary for a claimant to use the words "reasonable" and "necessary"; a claimant need only present sufficient evidence to justify a jury's finding that the costs were reasonable and the repairs necessary. *See Murnan*, 916 S.W.2d at 589; *Ron Craft Chevrolet, Inc. v. Davis*, 836 S.W.2d 672, 677 (Tex. App.—El Paso 1992, writ denied). However, mere proof of amounts charged or paid does not raise an issue of reasonableness and such amounts ordinarily cannot be recovered with-

out evidence showing the charges were reasonable. *See, e.g., Murnan,* 916 S.W.2d at 589; *GATX Tank Erection Corp.,* 693 S.W.2d at 620; *Bradley v. Castro,* 591 S.W.2d 304, 306 (Tex.Civ.App.—Fort Worth 1979, no writ); *Frost Nat'l Bank of San Antonio v. Kayton,* 526 S.W.2d 654, 666–67 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.); *Allright, Inc. v. Lowe,* 500 S.W.2d 190, 191 (Tex.Civ.App.—Houston [14th·Dist.] 1973, no writ).

In *GATX Tank Erection Corp.,* the court discussed the plaintiff's burden for proving the cost of repairs:

> The only evidence presented by Tesoro as to the cost of repairs is basically proof of the payment of certain invoices or accounts as to the repairs, without proof as to the reasonableness of such costs. Clearly there is proof as to the necessity of repairs to the tanks involved. However, under established principles of law it is necessary to prove both that such repairs were necessary and that the costs of repairs were reasonable.

*GATX Tank Erection Corp.,* 693 S.W.2d at 619.

Here, as in *Murnan* and *GATX Tank Erection Corp.,* there is evidence that Fort Worth Hilton believed repairs were necessary, but no evidence that the specific work done was necessary or that the costs spent on it were reasonable. *See, e.g., Murnan,* 916 S.W.2d at 589; *GATX Tank Erection Corp.,* 693 S.W.2d at 620. Fort Worth Hilton's efforts to prove up the actual and estimated cost of cosmetic repairs to the hotel amounted to Walker Harman reading a chart listing the alleged damages, the names of companies that made the repairs or provided estimates, and the bills for work that was actually done. Moreover, Harman did not address or even infer necessity or reasonableness in Tarrant County, as submitted in the charge. Thus, the jury was left to speculate whether money spent on the work was reasonable and whether that particular work was necessary. *See Murnan,* 916 S.W.2d at 589. We sustain Lone Star Gas's first cross-point. As a result, we need not address Fort Worth Hilton's ninth point concerning prejudgment interest.

## IV. CONCLUSION

We reverse the trial court's judgment and enter a take-nothing judgment in favor of Lone Star Gas.