COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-154-CV

 

 

JUDITH
CUNNINGHAM                                                 APPELLANT


   AND APPELLEE



                                                                                                        

                                                   V.

 

R.
KIM WILLIAMS AND PAMELA                                             APPELLEES

WILLIAMS
                                                         AND
APPELLANTS       

 

                                              ------------

 

          FROM
COUNTY COURT AT LAW NO. 2 OF DENTON COUNTY

 

                                              ------------

MEMORANDUM
OPINION[1]

 

                                              ------------

 








Appellant and Cross-Appellee
Judith Cunningham appeals from the jury=s findings for Appellees and Cross-Appellants R. Kim Williams and
Pamela Williams  on their claims of
breach of contract and of fraud and the trial court=s denial of her motion for new trial, motion for directed verdict, and
motion for judgment notwithstanding the verdict (AJNOV@).  Cunningham brings six issues on appeal:  (1) whether the trial court erred in denying
her motion for directed verdict when no basis exists in law or fact to support
the submission of the issues of breach of contract or of fraud; (2) whether the
trial court erred by denying her motion for directed verdict when no basis
exists in law or fact to support the submission of the issues of breach of
contract or fraud absent competent proof of damages; (3) whether the trial
court erred by denying her AMotion for Judgment Notwithstanding the Verdict and/or Motion to
Disregard Jury Findings@ when no
evidence exists to substantiate the findings of breach of contract and fraud;
(4) whether the trial court erred by denying her AMotion for New Trial and/or Motion to Modify, Correct, or Reform
Judgment@ when no evidence or insufficient evidence exists to support findings
of breach of contract and fraud; (5) whether the trial court=s submission of a fundamentally defective jury question resulted in
reversible error as a matter of law; and (6) whether the trial court=s denial of her AMotion for
Judgment Notwithstanding the Verdict and/or Motion to Disregard Jury Findings@ and her AMotion for
New Trial and/or Motion to Modify, Correct, or Reform Judgment@ resulted in a verdict that constitutes a double recovery. 








The Williamses appeal from
the trial court=s partial
grant of Cunningham=s motion for
judgment notwithstanding the verdict.  In
their sole cross-issue, they argue that the trial court erred by granting in
part Cunningham=s motion for
JNOV because legally sufficient evidence exists in the record to support the
jury=s finding on the issue of contract damages.  Because we hold that the evidence does not
support the jury=s findings,
we reverse the portion of the trial court=s judgment awarding damages for breach of contract and fraud and
render judgment that R. Kim Williams and Pamela Williams take nothing on their
claims of breach of contract and fraud.

I.  Facts and Procedural History








On May 26, 2004, Cunningham
contracted with the Williamses to sell them her house.  The Williamses claimed at trial that under an
amendment to the contract dated June 15, 2004 (Athe addendum@),
Cunningham had agreed to be responsible for replacing the roof by July 25,
2004.  The addendum, as drafted by the
Williamses, stated:  ASeller agrees to replace the existing roof no later than July 15, 2004
with [a] new roof of equal or better quality.@  The addendum went on to
specify the requirements of the new roof and then stated, ASeller agrees to be singularly liable for roof replacement in
accordance with the terms above.@  The Williamses signed the
addendum, and it was faxed to Cunningham. 
Cunningham inserted an asterisk after @July 15, 2004,@ and added
the language Asubject of
[sic] availability of roofing contractor acceptable to Allstate Insurance
Company@ (the Asubject to@ language).  Allstate was
Cunningham=s insurer
for the house.

The parties closed on June
30, 2004.  Cunningham did not deliver
immediate possession because her tenant, Michael Brindley, remained on the
property for several days after closing. 
With her then real estate agent acting as the broker, Cunningham had
entered into a lease with Brindley, effective as of October 4, 2003.  Cunningham characterized the lease at trial
as a Acastle keeper=s agreement@; Brindley lived in the house while the real estate agent attempted to
sell it.  The lease gave Cunningham the
option to terminate the lease upon thirty days= notice; Brindley could terminate the lease with sixty days= notice.  

The Williamses hired a lawyer
to assist in gaining possession of the house. 
Cunningham paid Brindley $3,000.00 to move out, and the Williamses took
possession on July 2, 2004.








After the Williamses moved
into the house and unsuccessfully attempted to have Cunningham pay for a roof
replacement, the Williamses replaced the roof themselves and brought suit
against Cunningham for breach of contract and for fraud.  Both claims were based on Cunningham=s failure to deliver possession of the house at closing and her
failure to replace the roof.  At the end
of the Williamses= case in
chief, Cunningham moved for a directed verdict, which the trial court
denied.  

Because the trial court
determined that the addendum was ambiguous, the court submitted to the jury the
question of whether Cunningham agreed to replace the roof.  The jury found for the Williamses on their
breach of contract and fraud claims, awarding damages of $11,271.44 as the
reasonable and necessary costs to replace the roof, $1,040.00 for the costs in
obtaining possession of the house, and $10,000.00 on their fraud claim.  Cunningham filed a AMotion for Judgment Notwithstanding the Verdict and/or Motion to
Disregard Jury Findings.@  The trial court granted the motion in part,
setting aside the jury=s award of
$11,271.44 for the roof replacement. 
Cunningham then filed a AMotion for New Trial And/or Motion to Modify, Correct, or Reform
Judgment@ (Amotion for
new trial@), which the
trial court denied.  Both Cunningham and
the Williamses appealed.

II.
Analysis

A. Motion for Directed Verdict








The arguments under
Cunningham=s first two
issues relate to the trial court=s denial of her motion for directed verdict.  If, at the end of the plaintiff=s case, a
defendant makes a motion for directed verdict but then proceeds with her case,
the motion must be reurged at the close of the defendant=s case to preserve
appellate review.[2]  The record
shows that after Cunningham closed her case, she did not reurge her directed
verdict motion.  She therefore did not
preserve these arguments for appeal.  We
overrule her first two issues.[3]

B. Motion for JNOV

Cunningham argues in her
third issue that the trial court erred by denying her motion for JNOV.  Cunningham does not include in her brief any
arguments in support of this issue. 
Because the issue is inadequately briefed, we do not consider it.[4]  We overrule Cunningham=s third issue.

C. Motion for New Trial

Cunningham=s fourth issue is a combined no-evidence and insufficient evidence
issue.  She argues that the trial court
erred by denying her motion for new trial when no evidence or insufficient
evidence supports findings of breach of contract and fraud and the jury=s damage awards for those claims. 









Cunningham=s issue statement asks whether the trial court erred by denying her AMotion for New Trial and/or Motion to Modify, Correct or Reform
Judgment@; she argues only that the trial court erred by denying her motion for
new trial.  Because her motion for new
trial was captioned AMotion for
New Trial and/or Motion to Modify, Correct or Reform Judgment,@ and in light of the phrasing of her issue, we construe this issue to
include an assignment of error to the denial of the motion to modify, as well.[5]  

We first determine what
remedy Cunningham seeks under this issue. 
Her brief does not specify whether she seeks rendition or remand; it
merely asks for the trial court=s judgment to be reversed.  If
the trial court erred by denying her motion on the no-evidence grounds asserted
under the motion to modify, then rendition, rather than remand, is proper.[6]  If the trial court erred by denying her
motion on grounds that she asserted only in her motion for new trial on factual
insufficiency grounds, then remand is proper.[7]








Under this issue, Cunningham
attacks the jury=s finding
that she agreed to replace the roof, its finding that she committed fraud, and
its award of damages for breach of contract. 
She contends that there is (1) no evidence or insufficient evidence to
support the jury=s award for
breach for contract damages, (2) insufficient evidence to support the jury=s finding that she agreed to replace the roof, and (3) no evidence or
insufficient evidence to support the jury=s finding that she committed fraud.

1. 
Standard of Review








A legal sufficiency challenge may only be sustained
when:  (1) the record discloses a
complete absence of evidence of a vital fact; (2) the court is barred by rules
of law or of evidence from giving weight to the only evidence offered to prove
a vital fact; (3) the evidence offered to prove a vital fact is no more than a
mere scintilla; or (4) the evidence establishes conclusively the opposite of a
vital fact.[8]  In determining whether there is legally
sufficient evidence to support the finding under review, we must consider
evidence favorable to the finding if a reasonable factfinder could, and
disregard evidence contrary to the finding unless a reasonable factfinder could
not.[9]

An assertion that the
evidence is factually insufficient to support a fact finding means that the
evidence supporting the finding is so weak or the evidence to the contrary is
so overwhelming that the answer should be set aside and a new trial ordered.[10]  We are required to consider all of the
evidence in the case in making this determination, not just the evidence that
supports the finding.[11]

2. The Jury=s Award of Breach of Contract Damages

We first consider Cunningham=s argument that there is no evidence to support the jury=s award of damages for breach of contract, specifically, for the
Williamses= obtaining
possession of the house.  Cunningham does
not argue that attorney=s fees are
not recoverable as damages in this case; she argues only that no evidence
supports the award.  








The evidence before the jury
showed that the Williamses= attorney=s fees in
obtaining possession were $1,040.00. 
There was also testimony that the Williamses bought furniture from
BrindleyBpayingAless than@ $500.00 for a dinette set and Aaround@ $300.00 for
a bedroom setBbut no
testimony as to whether the Williamses were required to pay Brindley for the
furniture to gain possession of the house and no other evidence linking the
furniture purchase to their claim that Cunningham breached their contract.  The record contains no other evidence
regarding the monetary value of the breach of contract claim.  The jury awarded the Williamses $1,040.00 on
this claim.  Accordingly, we can infer
that the jury awarded damages for the attorney=s fees claim but did not award damages for the purchased furniture. 

To be recoverable, attorney=s fees must be reasonable.[12]  A factfinder should consider the following
factors when determining the reasonableness of a fee:

(1)
the time and labor required, the novelty and difficulty of the questions
involved, and the skill requisite to perform the legal service properly;

 

(2)
the likelihood . . . that the acceptance of the particular employment will
preclude other employment by the lawyer;

 








(3)
the fee customarily charged in the locality for similar legal services;

 

(4)
the amount involved and the results obtained;

 

(5)
the time limitations imposed by the client or by the circumstances;

 

(6)
the nature and length of the professional relationship with the client;

 

(7)
the experience, reputation, and ability of the lawyer or lawyers performing the
services; and

 

(8)
whether the fee is fixed or contingent on results obtained or uncertainty of
collection before the legal services have been rendered.[13]  

 

An award of attorney=s fees must be supported by expert testimony.[14]  








Kim Williams testified that
he and his wife hired a lawyer to assist in getting possession of the house,
that they agreed to pay their attorney=s reasonable and necessary legal fees, and that they were billed
$1,040.00 by their attorney.  No one
testified as to the Arthur Andersen factors, and no expert testified
that the fees actually incurred were reasonable and necessary.  Thus, we hold that there is no evidence to
support the jury=s answer as
to damages in obtaining possession, and, accordingly, that the trial court
erred by denying Cunningham=s motion to modify the judgment to exclude this award.  We sustain Cunningham=s fourth issue with respect to the jury=s award of damages for the Williamses= costs in obtaining possession of the house.  We therefore do not reach Cunningham=s argument that there was insufficient evidence to support the jury=s award or her argument that the evidence was insufficient to support
the jury=s finding that she agreed to replace the roof.[15]

3. 
The Jury=s Finding
that Cunningham Committed Fraud








Cunningham next argues that
the trial court erred by denying her motion for new trial because all of the
requisite elements for fraud were not present. 
She makes three separate sub-arguments here.  She contends first that in order to recover
for fraud, a plaintiff must show a material misrepresentation by the defendant,
which cannot be vague, loose, or indefinite. 
Because the trial court found that the addendum was ambiguous,
Cunningham argues, she could not have made a material misrepresentation
required to establish fraud.  She also
maintains that the Williameses failed to prove that she had no intent to
provide occupancy by closing.  Finally,
she argues that there is no evidence of an injury suffered because of the
alleged fraud that is distinct from the Williamses= breach of contract claims, precluding recovery as a matter of
law.  We address her third sub-argument
first because it is dispositive.

Actual injury is an element
of common law fraud.[16]  In Texas, the Aactual injury@ must be an
injury distinct from damages arising from a breach of contract:  AIf the defendant=s conduct .
. . would give rise to liability independent of the fact that a contract exists
between the parties, the plaintiff=s claim may also sound in tort,@ but Aif the
defendant=s conduct .
. . would give rise to liability only because it breaches the parties= agreement, the plaintiff=s claim ordinarily sounds only in contract.@[17]  Furthermore, A[i]n determining whether the plaintiff may recover on a tort theory,
it is also instructive to examine the nature of the plaintiff's loss,@ and A[w]hen the
only loss or damage is to the subject matter of the contract, the plaintiff's
action is ordinarily on the contract.@  Tort damages are not precluded
when a breach of contract is involved if the plaintiff shows fraudulent
inducement.[18]








With respect to their claim
for fraud based on an agreement to replace the roof, the Williamses did not
allege that Cunningham fraudulently induced them to enter into the sales
contract.  And indeed they could not successfully
make such a claim in any case because the issue of roof replacement did not
arise until after the parties had already entered into the sales contract.  Thus, Cunningham could not have made
fraudulent misrepresentations about repairing the roof in order to procure the
sales contract, and she did not enter into the sales contract, promising to
replace the roof, with no intention of performing.[19]  With respect to the addendum, they did not
allege and could not allege that she induced them to enter into it.  There was some testimony that Cunningham=s real estate agent suggested amending the contract, but as for the
actual addendum, the Williamses themselves drafted the addendum and signed it,
and then submitted it to Cunningham.  Thus,
they could not have been relying on any misrepresentation she made in the
addendum.  Their only claim was that,
without the addendum, they would have attempted to terminate the contract.  Such a claim is not a claim that Cunningham
fraudulently procured a contract with them. 









Thus, to the extent that
their fraud claim was based on the addendum, the Williamses had to show an
injury distinct from their claim based on breach of contract.  Cunningham=s failure to replace the roof would not have given rise to liability
independent of the addendum.  Her conduct
gave rise to liability only because the conduct was in breach of what the jury
determined the parties had agreed to. 
Because the Williamses did not allege an injury distinct from damages
arising from a breach of contract, we hold that to the extent that the
Williamses= fraud
claims were based on Cunningham=s failure to replace the roof, there was no evidence to support the
damage award and the trial court erred by denying Cunningham=s motion to modify the judgment to exclude it.  We sustain Cunningham=s no evidence issue with respect to the Williamses= fraud claim regarding Cunningham=s failure to replace the roof.

Similarly, as to the
Williamses= fraud claim
based on Cunningham=s failure to
deliver possession of the house at closing, such failure would not have given
rise to liability independent of the agreement between the parties.  We therefore hold that to the extent that the
jury=s fraud finding was based on Cunningham=s failure to deliver possession of the property at closing, the
Williamses did not allege an injury distinct from damages arising from a breach
of contract. 








Further, to the extent that
their claim could be construed as a fraudulent inducement claim, the Williamses
presented no evidence of intent not to perform at the time that the contract
was entered into.  In their brief, they
point to the fact that, less than a week before the parties were scheduled to
close, Cunningham=s husband
told Brindley that he thought it was unlikely that closing would take place.  The testimony of Cunningham=s husband is evidence that problems developed between the parties
after the contract was entered into but is not evidence that, at the time the
contract was entered into, Cunningham had no intention of delivering possession
of the property at closing.  Accordingly,
there was no evidence to support the jury=s finding of fraud to the extent that it was based on Cunningham=s failure to deliver possession of the house at closing.  We sustain Cunningham=s fourth issue as to the fraud claim and do not reach any of her
further arguments raised under the issue.[20]

D. Defective Jury Question

In Cunningham=s fifth issue, she argues that the jury question on fraud damages was
fundamentally defective because it provided no guidance as to the proper legal
measure of damages.  The Williamses
contend that Cunningham did not properly preserve this objection.  Because we have already sustained Cunningham=s no‑evidence issue on the jury's award of damages for its
finding of fraud, we do not reach this issue.[21]








E. Double Recovery

In her sixth issue,
Cunningham argues that awarding the Williamses $1,040.00 for breach of contract
damages as well as damages for fraud constitutes a double recovery, and thus the
trial court erred by denying her motion for JNOV and her motion for new
trial.  Because we have already sustained
her no-evidence issue on the jury=s award of damages for breach of contract and for its finding of fraud,
we do not reach this issue.[22]

IV. Williamses= Cross-Appeal








We now consider the
Williamses=
cross-appeal.  The Williamses bring one
issue arguing that the trial court erred by granting in part Cunningham=s motion for JNOV because legally sufficient evidence exists in the
record to support the jury=s findings on contract damages.  
A trial court may disregard a jury verdict and render judgment
notwithstanding the verdict if no evidence supports the jury finding on an
issue  necessary to liability or
if a directed verdict would have been proper.[23]  A directed verdict is proper only under
limited circumstances: (1) when the evidence conclusively establishes the right
of the movant to judgment or negates the right of the opponent; or (2) when the
evidence is insufficient to raise a material fact issue.[24]
 To determine whether the trial
court erred by rendering a JNOV, we view the evidence in the light most
favorable to the verdict under the well-settled standards that govern legal
sufficiency review.[25]  In reviewing the legal sufficiency of the
evidence, we view the evidence in the light most favorable to the verdict,
crediting evidence favorable to the jury finding if reasonable jurors could and
disregarding evidence contrary to the finding unless reasonable jurors could
not.[26]









A plaintiff who seeks to
recover the cost of repairs must prove the reasonable value of those repairs.[27]  A plaintiff need not use the words Areasonable@ and Anecessary@ to
establish the right to recover costs of repairs; Aa claimant need only present sufficient evidence to justify a jury=s finding that the costs were reasonable and the repairs necessary.@[28]  But Amere proof of amounts charged or paid does not raise an issue of
reasonableness and such amounts ordinarily cannot be recovered without evidence
showing the charges were reasonable.@[29]  Evidence of an estimate alone
is also not proof of reasonableness; A[w]hen the expert who prepared the estimate of repairs does not
testify, the jury has no basis on which to evaluate the estimate.@[30]  Testimony that does no more
than recite the repair estimate and which Afurther states nothing with regard to reasonableness and necessity, is
no evidence of any damages amount.@[31]  













The Williamses contend that
the evidence they presented at trial was legally sufficient.  This evidence consisted of estimates from
roofing companies for replacing the roof, an invoice showing the cost the
Williamses paid to replace the roof, and testimony.  The invoice from Heathco Services Inc. states
that the amount of $11,274.44 was paid in full August 14, 2004.  Kim Williams, who acknowledged that he is not
a roof expert, testified as to the amount paid to Heathco to replace the
roof.  Jackie Cramer, an employee of
Cunningham=s real
estate agent, testified that she obtained two estimates for replacing the
roof.  Those estimates were admitted into
evidence as Plaintiff=s Exhibits
11 and 12 for the limited purpose of showing that estimates were obtained.  The trial court expressly did not allow the
estimates admitted for the truth of the matter contained in them.  The Williamses= attorney attempted to elicit testimony from Cramer that the estimates
were in line with other estimates in Denton County, but the trial court found
that her testimony would be speculative, sustained Cunningham=s objection, and did not allow the testimony.  Pamela Williams testified that the components
put on the roof were the same or of similar quality to the components included
in the estimates in Exhibits 11 and 12, but then testified that she did not
compare the material used by Heathco with the other estimates to make sure that
she was getting the same components as used in those estimates.  We agree with Cunningham that no evidence exists
to substantiate an award for money damages for breach of contract with respect
to the roof repairs.  The Williamses= testimony
at trial was no more than testimony as to the amount paid, which is not
evidence of reasonableness.[32]  Estimates obtained by an employee of
Cunningham=s real
estate agent were admitted, but only for the evidence that estimates were
obtained, and the experts who prepared the estimates did not testify.  Consequently, the jury had no basis on which
to evaluate the estimates.[33]  Thus, the Williamses produced no evidence of
the reasonable cost of repairs, and the trial court did not err by granting
Cunningham=s motion for
JNOV on the breach of contract damages as to the roof repairs.  Accordingly, we overrule the Williamses= cross-issue.

V.
Conclusion

Having sustained Cunningham=s fourth issue and overruled the Williamses= cross-issue, we reverse the portion of the trial court=s judgment awarding damages for breach of contract and fraud and
render judgment that R. Kim Williams and Pamela Williams take nothing on their
claims of breach of contract and fraud. 
We affirm the remainder of the trial court=s judgment.

 

 

 

LEE ANN DAUPHINOT

JUSTICE

 

PANEL B:   DAUPHINOT, HOLMAN, and
MCCOY, JJ.

MCCOY, J. concurs without opinion.

DELIVERED: December 20, 2007











[1]See Tex. R. App. P. 47.4.





[2]Horton v. Horton, 965 S.W.2d 78, 86 (Tex. App.CFort Worth 1998, no pet.).





[3]See
id.





[4]See Tex. R. App. P. 38.1(h); Citizens Nat=l
Bank v. Allen Rae Invs., Inc., 142 S.W.3d 459, 489-90
(Tex. App.CFort
Worth 2004, no pet.) (op. on reh=g) (A[A]n
inadequately briefed issue may be waived on appeal@).





[5]See Tex. R. App. P. 38.9 (ABriefing
Rules to Be Construed Liberally@).





[6]See
Olin Corp. v. Dyson, 678 S.W.2d 650, 657-658 (Tex. App.CHouston
[14th Dist.] 1984), rev=d on other grounds by Dyson
v. Olin Corp., 692 S.W.2d 456 (Tex. 1985) (holding that there
is no legal or practical basis for the proposition that an appellant's failure
to request reversal and rendition in his prayer for relief limits the authority
of the appellate court to grant rendition on a no-evidence point); see also
Tex. R. App. P. 43.3.





[7]See
Alm v. Aluminum Co. of Am., 717 S.W.2d 588, 594 (Tex. 1986) (AA
trial court may not disregard a jury's answer because it is against the great
weight and preponderance of the evidence. 
In such a situation, the trial court may only grant a new trial.@)
(citations omitted).





[8]Uniroyal Goodrich Tire Co. v.
Martinez, 977
S.W.2d 328, 334 (Tex. 1998), cert. denied, 526 U.S. 1040 (1999);
Robert W. Calvert, ANo
Evidence@ and
AInsufficient
Evidence@
Points of Error, 38 TEX. L.
REV. 361, 362-63 (1960). 





[9]City of Keller v. Wilson, 168 S.W.3d 802, 807,
827 (Tex. 2005). 





[10]Garza
v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965).





[11]Mar.
Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex.), cert.
denied, 525 U.S. 1017 (1998).





[12]Tex. Civ. Prac. & Rem. Code Ann. '
38.001 (Vernon 1997); Commonwealth Lloyd's Ins. Co. v. Thomas, 678
S.W.2d 278, 284 (Tex. App.CFort Worth 1984, writ refused
n.r.e.) (AAttorneys'
fees, where recoverable by law, must be reasonable under the particular
circumstances of the case and must bear some reasonable relationship to the
amount in controversy.@).





[13]Tex. Disciplinary R. Prof=l Conduct 1.04, reprinted in Tex.
Gov=t Code Ann., tit. 2, subtit. G app. A
(Vernon Supp. 2007) (Tex. State Bar R. art.
X, ' 9));
see also Arthur Andersen & Co. v. Perry Equip. Corp., 945
S.W.2d 812, 818 (Tex. 1997)





[14]Woollett
v. Matyastik, 23 S.W.3d 48, 52 (Tex. App.CAustin
2000, pet. denied). 





[15]See Tex. R. App. P. 47.1.





[16]M.D.
Anderson Cancer Ctr. v. Novak, 52 S.W.3d 704, 707 (Tex.
2001) (recognizing that in Texas common-law fraud requires a showing of actual
injury). 





[17]Sw.
Bell Tel. Co. v. DeLanney, 809 S.W.2d 493, 494 (Tex. 1991). 





[18]See
Formosa Plastics Corp. USA v. Presidio Eng=rs
& Contractors, Inc., 960 S.W.2d 41, 45-46 (Tex. 1998) (A[I]t
is well established that the legal duty not to fraudulently procure a contract
is separate and independent from the duties established by the contract itself.@)





[19]See
id.





[20]See Tex. R. App. P. 47.1.





[21]See id.





[22]See
id.





[23]See Tex. R.
Civ. P. 301; Tiller
v. McLure, 121 S.W.3d 709, 713 (Tex. 2003); Fort Bend County Drainage
Dist. v. Sbrusch, 818 S.W.2d 392, 394 (Tex. 1991).





[24]Prudential Ins. Co. v. Fin. Review
Servs., Inc., 29
S.W.3d 74, 77 (Tex. 2000); Ray v. McFarland, 97 S.W.3d 728, 730 (Tex.
App.CFort Worth 2003, no pet.).





[25]See Wal-Mart Stores, Inc. v. Miller, 102 S.W.3d 706, 709 (Tex. 2003). 





[26]See City of Keller v. Wilson, 168 S.W.3d 802, 807, 827 (Tex.
2005).





[27]Fort
Worth Hotel Ltd. P=ship
v. Enserch Corp., 977 S.W.2d 746, 762 (Tex. App.CFort
Worth 1998, no pet.). 





[28]Id.





[29]Id. at
762-763; see also Mustang Pipeline Co. v. Driver Pipeline Co., 134
S.W.3d 195, 200‑01 (Tex. 2004); GATX Tank Erection Corp. v. Tesoro
Petroleum Corp., 693 S.W.2d 617, 620 (Tex. App.CSan
Antonio 1985, writ ref=d
n.r.e.). 





[30]Carrow
v. Bayliner Marine Corp., 781 S.W.2d 691, 694 (Tex. App.CAustin
1989, no writ). 





[31]Jordan
Ford, Inc. v. Alsbury, 625 S.W.2d 1, 3 (Tex. Civ. App.CSan
Antonio 1981, no writ).





[32]See
Fort Worth Hotel Ltd. P=ship., 977
S.W.2d at 762.





[33]See
Carrow, 781 S.W.2d at 694.