

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NO. 02-18-00119-CV**

EUSEBIO PALACIOS                                                          APPELLANT

V.

JAYABEN PATEL                                                            APPELLEE

----------

## FROM THE 48TH DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 048-262207-12

----------

## MEMORANDUM OPINION[1]

----------

Eusebio Palacios (Palacios) appeals from a final judgment awarding damages to Jayaben Patel (Patel). Patel had sued Palacios and several others to establish title to a home and recover alleged damages. Per the final judgment, the trial court ordered that "on the causes of action for Trespass to Real Property, Conversion[,] Fraud, Negligence, Trespass to Try Title to Action, and Suit to Quiet

---

[1]*See* Tex. R. App. P. 47.4.

Title, . . . Patel shall have and recover JUDGMENT, jointly and severally, against Defendants Herbert Harris, H&H Global, Vicki Young and Eusebio Palacios for the total amount of $135,000.00 (No/100 Dollars)." So too did it award Patel 1) exemplary damages "against all Defendants, jointly and severally" in the amount of $60,000 and 2) attorney's fees, both through trial and on appeal. Palacios asserts numerous issues in an effort to reverse the judgment or portions of it.[2] Upon considering them, we suggest a remittitur, the acceptance of which by Patel will result in the reversal of portions of the trial court's judgment. Should Patel reject the suggestion of remittitur, we will not only reverse portions of the trial court's judgment but also remand for a new trial the civil conspiracy and conversion causes of action. Regardless of whether Patel accepts the suggestion of remittitur, we affirm the portion of the trial court's judgment declaring Patel to be the property's owner.

### Background

The dispute arose when Patel left her home for a trip to India. While gone, Herbert Harris caused the home's contents to be removed and ownership of the realty to be placed in his name. None of this occurred with Patel's knowledge or

---

[2]Patel filed an appellee's brief bereft of citation to the record and to legal authority. Needless to say, her effort did not comport with the briefing requirements imposed on appellees by the Texas Rules of Appellate Procedure. *See* Tex. R. App. P. 38.1(i) (stating that the brief must contain a clear and concise argument for the contentions made with appropriate citations to authorities and the record); Tex. R. App. P. 38.2(a) (stating that the appellee's brief generally must conform to the requirements of Rule 38.1).

approval but rather through forged instruments purportedly notarized by Vicki Young and Gloria Andrews. Thereafter, Harris purportedly sold the house to Palacios for $75,000.

Patel eventually returned from India to discover what had occurred. Her discovery caused her to initiate the lawsuit underlying this appeal. Through her live pleading she alleged causes of action for "Trespass to Land," "Conversion," "Fraud," and "Negligence." Furthermore, in her opening paragraph under the heading "Facts," she also stated that "[t]his action is one for Trespass to Try Title under Chapter 22 of the Texas Property Code, and Rules 783 et seq., of the Texas Rules of Civil Procedure."

Patel later moved for a partial summary judgment declaring her to be the owner of the property. The trial court granted her that limited relief and entered a partial summary judgment ordering that she be "declared the lawful owner of" the real estate.[3] The remaining causes of action then were tried to the court. Palacios was the only defendant to appear and participate in that proceeding. Once it ended, the trial court executed its final judgment, resulting in this appeal.

### *Trespass to Try Title and Suit to Quiet Title*

The first issues we address involve causes of action mentioned in Patel's motion for partial summary judgment but allegedly omitted from her live pleading, i.e., her first amended petition. The causes of action were to quiet title and to try

---

[3]This declaration was not manifested in the final judgment, though.

3

title. Because they were not alleged in the live pleading, Palacios contended that they could not provide a basis for recovery. We overrule the issues.

Regarding the complaint about the trespass to try title cause of action, we again note that it was mentioned in Patel's live pleading. It appeared in the first sentence of her opening paragraph under the category "Facts." So, it cannot be said that Palacios was denied notice of the action. And, assuming the allegation was defective, he had the obligation to specially except to it to preserve his complaint. *See Swett v. At Sign, Inc.*, No. 02-08-00315-CV, 2009 WL 1425161, at *3 (Tex. App.—Fort Worth May 21, 2009, no pet.) (mem. op.) (holding that pleading defects are waived unless specifically mentioned in a written exception brought to the attention of the trial court before the judgment is signed in a nonjury case). Since no special exceptions were filed before the trial court granted summary judgment, complaints pertaining to their sufficiency were waived. *Id.*

As for the action to quiet title, nothing was said in the first amended petition about it. Yet, the cause of action was one of the two grounds upon which Patel sought partial summary judgment. Furthermore, the partial summary judgment motion was served upon counsel for Palacios along with notice of the hearing date. Palacios filed nothing in response, though; nor did he otherwise object to Patel's effort to obtain judgment on the unpled claim. This omission was fatal given Rule 166a(c) of the Rules of Civil Procedure.

Per Rule 166a(c), "[i]ssues not expressly presented to the trial court by written motion, answer[,] or other response shall not be considered on appeal as

4

grounds for reversal." Tex. R. Civ. P. 166a(c); *Margetis v. Frost Nat'l Bank*, No. 02-12-00027-CV, 2012 WL 4936611, at *2 (Tex. App.—Fort Worth Oct. 18, 2012, no pet.) (mem. op.). Here, Palacios is not arguing that Patel failed to establish her entitlement to summary judgment as a matter of law. Rather, he broached a pleading deficiency about which he never complained to the trial court. Consequently, that pleading deficiency may not serve as a basis for reversing the partial summary judgment. *See Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991) (holding that "[i]f the non-movant does not object to a variance between the motion for summary judgment and the movant's pleadings, it would advance no compelling interest of the parties or of our legal system to reverse a summary judgment simply because of a pleading defect").

### *Negligence*

Next, Palacios argued that "[a]lthough Patel did plead negligence, she did not plead negligence against [him]." The claim allegedly encompassed only "Vicki Young and Gloria Andrews." Consequently, "[t]here is . . . no pleading to support judgment as to negligence against Palacios[,] and the judgment should be reversed." We sustain the issue.

Palacios's contention that judgments must conform to the pleadings is quite accurate. *See* Tex. R. Civ. P. 301 (so requiring); *Jackson v. Kisiah*, No. 02-12-00371-CV, 2013 WL 3064517, at *1 (Tex. App.—Fort Worth June 20, 2013, no pet.) (mem. op.). Normally, a party may not obtain a judgment based upon a theory he failed to plead. *Jackson*, 2013 WL 3064517, at *1. Furthermore, Patel

acknowledged that her allegation did not encompass Palacios but rather was limited to Young and Andrews. However, she attempted to extricate herself from the effect of Rule 301 by suggesting that 1) Palacios was responsible for the negligence of Young and Andrews because he conspired with them, and 2) the issue of Palacios's negligence was tried by consent.

Whether one can conspire to be negligent was addressed by our supreme court over twenty years ago in *Juhl v. Airington*, 936 S.W.2d 640 (Tex. 1996). It held that they could not. Since negligence is not an intentional wrong and civil conspiracy requires the specific intent to agree to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, "one cannot agree or conspire to be negligent." *Id.* at 644; *see Tri v. J.T.T.*, 162 S.W.3d 552, 557 (Tex. 2005) (reiterating that holding). And, as previously indicated, Patel cited us to no authority, much less to authority contradicting the Texas Supreme Court, on this matter.

Concerning her other means of evading Rule 301, this court has stated that the theory of trial by consent is applicable "to exceptional cases where it **clearly appears** from the record as a whole that the parties tried by consent an issue that had not been pleaded." *Jackson*, 2013 WL 3064517, at *2 (emphasis added). It does not exist to "establish a general rule of practice" and, consequently, "should be applied with care and never in a doubtful situation." *Id.* And, in assessing whether the issue was so tried, we "examine the record not for *evidence of the issue* but rather for *evidence of trial of the issue*." *Id.* In other words, we look for

6

evidence of circumstances "indicating [that] both parties understood the issue was in the case" and had a "clear intent" to try it. *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 744 (Tex. App.—Fort Worth 2008, pet. dism'd) (citing *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 771 (Tex. App.—Dallas 2005, pet. denied)). Excluded from the scope of trial by consent, though, are situations wherein "evidence relevant to an unpleaded matter is also relevant to a pleaded issue." *Case Corp.*, 184 S.W.3d at 771. This is so because the "admission of the evidence would not be calculated to elicit an objection, and . . . ordinarily would not demonstrate a 'clear intent' on the part of all parties to try the unpleaded issue." *Id.* With these caveats in mind, we turn to the appellate record.

Under the heading "Negligence" in her live pleading, Patel obviously alleged a negligence cause of action. But, again, it encompassed only the misfeasance of Young and Andrews. Moreover, the conduct attributed to Palacios in the same pleading tended to involve intentional torts, such as forgery, fraud, and trespass. The same is true of the evidence presented at trial; none tended to indicate that he negligently breached some duty owed to Patel. Rather, it illustrated his potential involvement with 1) intentional acts of forgery, 2) the intentional removal of all the personalty from the Patel home while the family was in India, and 3) his intentional entry onto the realty upon gaining purported title. In short, the evidence of misconduct on his part generally pertained to Palacios's commission of intentional torts encompassed within the live pleading, which circumstance triggers what was said in *Case Corp.* Trial by consent is not a means of trying an unpled

7

theory when the evidence purportedly relevant to that theory is also relevant to a cause of action averred in the pleading.

In short, Patel neglected to include Palacios within the scope of her negligence claim. Thus, the trial court erred in holding him liable for negligence, which error resulted in the rendition of an improper judgment under Texas Rule of Appellate Procedure 44.1(a).

### *Exemplary Damages*

Next, Palacios contended that Patel failed to plead for and prove her entitlement to exemplary damages. We sustain the issue.

One seeking special damages must specifically plead for same. *See* Tex. R. Civ. P. 56 (stating that "[w]hen items of special damage are claimed, they shall be specifically stated"). Punitive or exemplary damages are special damages. *In re Shaw*, No. 13-10-00487-CV, 2010 WL 4264796, at *4 (Tex. App.—Corpus Christi Oct. 27, 2010, orig. proceeding) (mem. op.) (stating that "[e]xemplary damages are special damages that must be supported by express allegations of willfulness, malice, or gross negligence that go beyond the allegations necessary to recover compensatory damages"). So, one seeking exemplary damages must specifically plead for them. *W. Union Tel. Co. v. Sorenson*, 56 S.W.2d 672, 672 (Tex. Civ. App.—San Antonio 1933, no writ).

Patel did not request exemplary damages either in her pleadings or at trial. Indeed, no one broached the topic until it was first mentioned within a letter from the trial court after the trial ended. Through the missive, the trial court informed

8

the parties that it "decided to grant Plaintiff judgment against all Defendants jointly and severally in the amount of $135,000 in actual damages and $60,000 in exemplary damages."

Furthermore, the very evidence potentially subjecting a litigant to punitive damages is generally quite relevant to whether the litigant committed the underlying tort upon which those damages were based. *See, e.g.*, Tex. Civ. Prac. & Rem. Code Ann. § 41.011(a)(1)–(3) (West 2015) (stating that a trier of fact may consider the nature of the wrong, the character of the conduct involved, and the wrongdoer's culpability in assessing punitive damages). For instance, punitive damages may be available in cases involving malice, and malice covers intentional torts where there existed a specific intent to cause substantial injury or harm. *Bennett v. Reynolds*, 315 S.W.3d 867, 871 n.13 (Tex. 2010). So, in proving the intentional tort of conversion, the evidence may be relevant to both the cause of action and the topic of punitive damages. Contrary to Patel's suggestion, we cannot say that the evidence she presented in an attempt to establish her accusations involving intentional torts necessarily informed Palacios that exemplary damages were in play for purposes of establishing that the matter was tried by consent. At the very least, application of the doctrine of trial by consent would appear doubtful here given the underlying circumstances, and that prevents us from applying it. *See Case Corp.*, 184 S.W.3d at 771.

In sum, exemplary damages were not recoverable against Palacios since Patel never requested them. This was and is another instance of the judgment

9

failing to conform to the pleadings which resulted in the rendition of an improper judgment under appellate rule 44.1(a)(1).

### *Attorney's Fees*

Palacios also attacked the trial court's award of attorney's fees to Patel and did so via several grounds.[4] We need only address one for it is dispositive. The ground we address concerns the absence of legal authority authorizing such fees.

It has long been true in Texas that one may not recover attorney's fees unless same are authorized by statute or contract. *Dudley Constr., Inc. v. ACT Pipe & Supply, Inc.*, No. 16-0651, 2018 WL 1660176, at *7 (Tex. Apr. 6, 2018) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006)). Patel sued upon no contract between her and Palacios, much less one authorizing the recovery of attorney's fees. Moreover, such fees were not recoverable via a claim of 1) fraud, *see Tony Gullo Motors I, L.P.*, 212 S.W.3d at 304 (stating that "[f]or fraud, [Chapa] could recover economic damages, mental anguish, and exemplary damages, but not attorney's fees"); 2) negligence, *see Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 568 (Tex. 2002); 3) quieting title, *see Starbranch v. Crowell*, No. 01-15-00429-CV, 2016 WL 796836, at *2 (Tex. App.—Houston [1st Dist.] Mar. 1, 2016, no pet.) (mem. op.); 4) trespass to try title, *see Biltex Enters., Inc. v. Myers*, No. 02-13-00465-CV, 2015 WL 1967285, at *3 (Tex. App.—Fort

---

[4]The trial court awarded Patel attorney's fees of $5,000 through trial and a total of $20,000 if the judgment was appealed to the Texas Supreme Court.

Worth Apr. 30, 2015, no pet.) (mem. op.); 5) trespass, *see Wilen v. Falkenstein*, 191 S.W.3d 791, 805 (Tex. App.—Fort Worth 2006, pet. denied) (involving a claim of trespass and striking the award of attorney's fees because the action was not founded on the interpretation of a contract and attorney's fees were not authorized by statute); 6) conversion, *Quality Hardwoods v. Midwest Hardwood Corp.*, No. 02-05-00311-CV, 2007 WL 1879797, at *5–6 (Tex. App.—Fort Worth June 28, 2007, no pet.) (mem. op.); or 7) civil conspiracy, *see Great N. Energy, Inc. v. Circle Ridge Prod.*, 528 S.W.3d 644, 677–78 (Tex. App.—Texarkana 2017, pet. denied) (remanding the cause for the reassessment of recoverable attorney's fees because Circle Ridge alleged tort claims for which attorney's fees were not recoverable such as negligence in forging documents and civil conspiracy for forgery and it did not segregate the recoverable fees from unrecoverable ones). Given that these were the very causes of action Patel urged and attorney's fees were authorized for none, the trial court had no legal basis to award them. So it erred, and the mistake resulted in the rendition of an improper judgment. We sustain the issue.[5]

---

[5]To the extent that Patel opined that the matter also was tried by consent, she failed to cite us to authority holding that the doctrine applies to situations wherein the law itself bars the recovery of fees. Indeed, applying the doctrine here would be akin to upholding a recovery upon a nonexistent cause of action. We eschew her invitation to journey down that road at this time.

### Joint and Several Liability

Palacios also questioned whether the trial court erred in holding him jointly and severally liable for all the damages awarded. His complaint was based upon the absence of pleadings seeking such. In response, Patel again raised the spectre of trial by consent, and this time we agree with her.

During trial of the cause, Palacios's attorney told the trial court: "[s]o what I'm trying to figure out is what the potential liability here which the plaintiffs seek to impose upon my client **jointly and severely** [sic] with Mr. Harris." [Emphasis added.] If nothing else, this passage illustrates that Palacios not only knew his opponent was pursuing the concept of joint and several liability but also attempted to defend against it in some respect. More importantly, he did not object. Given this, we can safely conclude that the parties clearly intended to try the issue by consent. *See Case Corp.*, 184 S.W.3d at 771. We overrule the issue.

### Sufficiency of the Evidence

We now turn to Palacios's assertions regarding the legal sufficiency of the evidence underlying various trial court findings. In doing so, we address each under the standard of review recently discussed by the Texas Supreme Court in *Hill v. Shamoun & Normand, LLP*, No. 16-0107, 2018 WL 1770527, at *7 (Tex. Apr. 13, 2018). That is, evidence is legally insufficient to support a jury finding when 1) the record discloses a complete absence of evidence of a vital fact, 2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, 3) the evidence offered to prove a vital fact

12

is no more than a mere scintilla, or 4) the evidence conclusively establishes the opposite of a vital fact. *Id.* When determining whether there is no evidence of probative force to support a jury's finding, we consider all the record evidence in the light most favorable to the party in whose favor the verdict has been rendered. *Id.*

Furthermore, because the suit was tried to the court and no findings of fact and conclusions of law were requested or filed, we note our obligations to imply the existence of those findings necessary to support the judgment and uphold that judgment on any legal theory supported by the evidence. *See Burley v. Burley*, No. 02-16-00119-CV, 2017 WL 4542854, at *4 (Tex. App.—Fort Worth Oct. 12, 2017, no pet.) (mem. op.) (so requiring).

### *Conspiracy*

We begin with another unpled cause of action, that of civil conspiracy. Though not expressly mentioned by Patel in her live pleading, it is clear that the matter was part of the suit. We so conclude for several reasons. First, establishing a civil conspiracy results in the actors becoming jointly and severally liable for the damages caused by the conspirators in furtherance of the agreement. *See LandAm. Commonwealth Title Co. v. Wido*, No. 05-14-00036-CV, 2015 WL 6545685, at *11 (Tex. App.—Dallas Oct. 29, 2015, no pet.) (mem. op. on reh'g). As shown above, Palacios knew Patel sought to impose upon him such liability.

Second, counsel for Patel expressly broached the topic at trial, as exemplified in an exchange with the trial court. During the exchange, the trial court

13

attempted to determine the relevance of questions being asked a particular witness. In response, Patel's attorney said: "[y]our Honor, it's my theory of the case that [Palacios] *jointly conspired* with Mr. Harris to create this." [Emphasis added.] Palacios uttered nothing in return; he neither objected or otherwise complained about Patel's failure to mention the claim in her pleadings.

Third, Patel offered evidence throughout the trial purporting to establish more than a fortuitous relationship between Palacios and Harris. Examples of such include a detective opining that Palacios and spouse were "*complicit* in forging" the deed with Harris and that he "believed that there was *some complicity* between the sale of the house to the Palacios[es] and Harris." [Emphasis added.] This occurred early in the proceeding. Other evidence indicated that the spouses of Palacios and Harris had "a mutual address . . . off of MD Love in Dallas."

Fourth, and most telling, is a statement uttered by counsel for Palacios during his closing argument. He began by asserting that: "the plaintiff bears the burden of establishing *a conspiracy*[ and] . . . failed to do that." [Emphasis added.]

Palacios knew of Patel's intent to hold him jointly and severally liable for the acts of others. He was present and sat silently when Patel's legal counsel declared in open court that his theory of the case evolved around Harris and Palacios jointly conspiring. So too was he present and remained quiet when Patel's counsel offered evidence supporting the allegation of complicity. And, counsel for Palacios expressly addressed the topic of conspiracy in his closing. Such is enough to reveal that all the litigants clearly knew the theory of civil conspiracy was in play

14

and being tried. And, most importantly, no one objected. So, it is quite easy to imply a finding that the trial court found the presence of a civil conspiracy in opting to hold Palacios jointly and severally liable for the actions of others. *See Case Corp.*, 184 S.W.3d at 771.

Despite knowing that the cause of action was being tried, Palacios did not attack the implied finding that he engaged in a civil conspiracy. Little was said about the theory in his initial brief. When Patel mentioned it in her rather conclusory appellee's brief, Palacios simply responded by suggesting that we should ignore her contentions due to deficient briefing. Yet, it was his obligation to attack the finding on appeal before we could set aside its relevance, and he did not. So, in effect, the finding must stand, and we see no reason to negate it given the quantum of evidence within the record underlying it.

Per the record, we see that Patel bought the home and surrounding realty in question during 2009. It consisted of a 10,600-square-foot house sitting on seven acres of land within a community deemed rather affluent. Its purchase price was $600,000, and it had a like value on the local tax rolls. Upon acquiring it, she and her family also began remodeling the abode and its environs. They also bought furnishings to place in it.

Several years later (on December 5, 2011), Patel left for India to attend several weddings. Her husband and daughter followed her on January 15, 2012. They returned to the house on February 2, 2012, to find it stripped of its contents and listed in the deed records as being owned by Palacios.

15

The paper trail leading to Palacios began with a "residential contract" he executed on January 7, 2012. Next to his signature appeared what supposedly was that of Patel. Both signatures were notarized by Young, purportedly on January 7, 2012, and while Patel was thousands of miles away in India. Various initials were also written at the bottom of each page of the agreement. The initials represented the names of Palacios, Patel, and Harris. Needless to say, Patel disavowed the signature as hers at trial. So too did she deny knowing Palacios, agreeing to sell him the house, or receiving payment for it.

Two other matters involving the "residential contract" are of interest. The first is the date on which the sales transaction was to close, that date being January 7, 2012, or the day the contract was executed. The second is the amount Palacios agreed to pay for a home appraised at $600,000, that amount being $75,000.

Accompanying the "residential contract" was a "receipt" dated January 7, 2012, illustrating that Patel was the recipient of $75,000 in cash. The alleged signatures on the "receipt" were those of Harris, Palacios, and Patel, which Young also happened to notarize.

One other document was notarized by Young on January 7, 2012. Entitled a "warranty deed," it purported to convey the house and land in question from Patel. Yet, the grantee was not Palacios but rather Harris. Furthermore, this document also carried what was alleged to be Patel's signature and markings that

16

indicated it was filed of record with the local county clerk on January 9, 2012. The residential contract carried a like file-mark, although dated January 30, 2012.

Interestingly, we encountered in the appellate record no written instrument purporting to convey title to Palacios. There is a "deed of trust" executed on January 27, 2012, not only naming him as grantor and Harris as beneficiary but also describing the execution by Palacios of a note payable to Harris. The amount of the note was $66,000. There is also a "warranty deed with vendor's lien" naming Harris as "maker" and Palacios as "payee." It too alludes to a $66,000 note payable to Harris by Palacios. Both instruments also contain a legal description of the realty involved here, and both carry a county clerk's stamp of January 30, 2012. Yet, neither expressly convey title of the Patel realty to Palacios.

Other evidence before us disclosed that individuals began entering the Patel home and removing property from it before Mr. Patel and his daughter actually landed in India. Their neighbor informed them of same via email. She also contacted the police. Those found removing the personalty included Harris, who told both the neighbor and police that he had recently bought the home. Having evidence of title, he continued taking the furnishings.

To the foregoing we add other bits of evidence. One reveals the nature of Palacios's business. He bought homes, repaired them, and subsequently sold the repaired units. Additionally, while pursuing that endeavor, he became familiar with the home in question. That was in 2007. Palacios viewed it with a realtor, determined it needed extensive repairs, and considered the price too high to

17

warrant purchasing it at the time. Another bit of evidence concerns the testimony imparted by the investigating detective. As previously mentioned, he indicated that the wives of Harris and Palacios had a "mutual address." The final bit meriting comment revealed that Harris and Palacios discussed the acquisition of the home around the end of 2011 or first week of 2012.

It is a rare case where defendants accused of conspiring to commit tortious conduct admit it at trial. Thus, circumstantial evidence plays an important role in proving the claim. And, despite the popular television clichés about the worth of circumstantial evidence, it indeed has legal, probative value. Circumstantial evidence, along with reasonable inferences therefrom, may well be enough to support a factfinder's decision. *See In re Lipsky,* 411 S.W.3d 530, 549 (Tex. App.—Fort Worth 2013, orig. proceeding) (stating that a "civil conspiracy claim may be proved by circumstantial evidence and reasonable inferences from parties' actions"), *mand. denied*, 460 S.W.3d 579 (Tex. 2015). It does here.

Viewing the evidence in a light most favorable to the judgment per *Hill*, we find evidence of 1) a pre-existing relationship between the wives of Palacios and Harris; 2) Palacios's pre-existing, unfulfilled interest in the Patel home and acreage; 3) Palacios's pre-existing knowledge of the high price of the home and acreage; 4) Palacios's relative sophistication and experience in the real estate market given the nature of his business; 5) Harris's discussing the home and acreage with Palacios; 6) the short period between Patel leaving for and returning from India; 7) Harris and Palacios's executing and filing of record instruments

18

memorializing an agreement to convey and allegedly conveying the highly valued home and acreage for what one could reasonably call a nominal sum; 8) the placement of Patel's signature on those documents at a time when she could not have been present; 9) the rapidity with which the purported sale was completed; 10) Palacios's avowed disinterest in seeing the home prior to the transaction's completion; 11) the attempt to structure the conveyance in a way suggesting Palacios was a bona fide purchaser; 12) the rapidity with which the home's furnishings were removed by Harris and in which Palacios gained entry; and 13) the coordination of purpose and effort needed to complete the entire process before the Patels returned home.

Admittedly, there exists evidence of record contradicting the presence of a scheme and suggesting that Palacios fell prey to the deceit of Harris. Much of it came from Mrs. Palacios and other defense witnesses. Each could be viewed as potentially biased given their familial or working relationship with him, though. Moreover, Mrs. Palacios's credibility actually came into dispute when she was directed by Palacios's attorney to forego answering particular questions about her commission of potential criminal acts while performing duties as a notary public. That alone would entitle the factfinder to discredit her honesty. *See In re M.L.C.*, No. 04-17-00459-CV, 2017 WL 6597828, at *4 (Tex. App.—San Antonio Dec. 27, 2017, pet. denied) (mem. op.) (stating that "a fact finder may draw an adverse inference against a parent who pleads the Fifth Amendment"). Consequently, the

trial court, as factfinder, was free to disbelieve the defense witnesses and credit the circumstantial evidence alluded to above.[6]

In sum, the foregoing is some evidence enabling a factfinder to rationally infer the existence of a plan to which Palacios and Harris agreed and which involved the commission of overt and unlawful acts resulting in Patel's injury. *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017) (identifying the elements of civil conspiracy as 1) a combination of two or more people; 2) who seek to accomplish an object or course of action; 3) who reach a meeting of the minds on the object or course of action; 4) who undertake one or more unlawful, overt acts in pursuit of the object or course of action; and 5) who proximately cause damage to the complainant as a result of the combination). So, the implied finding of conspiracy does have the support of legally sufficient evidence. *See Hill*, 2018 WL 1770527, at *7. And, again, because Palacios did not attack that finding, it must stand.

### *Sufficient Evidence of Trespass and Damage?*

We now address Palacios's next sufficiency complaint. It concerns the tort of trespass, and he argued that there was no evidence that his entry onto the realty "on January 30, 2012[,] caused any damage to the Property" since it was "undisputed that the personal property was removed before [he] took possession

---

[6]Moreover, Palacios's failure to also attack the evidence as factually insufficient to support the decision prevents us from deviating from the rather lax standard of review implicit in attacking a verdict as legally insufficient.

of the Property and was not removed by [him]." It may be that the personalty within the home was removed before Palacios physically appeared on the land. Yet, as we said earlier, there was a conspiracy to displace Patel and of one or more co-conspirators removing her property. That conspiracy permitted the factfinder to conclude that Palacios was jointly and severally responsible for damage caused to the property under the theory of trespass, and we overrule the issue. *See id.*

### *Sufficient Evidence of Conversion?*

Next, Palacios contended that the evidence was insufficient to illustrate that he converted Patel's personalty. This allegedly was so because the conversion occurred before he stepped foot into the house. In overruling the contention, we refer the parties to the immediately preceding paragraph. Simply put, the conspiracy rendered Palacios liable for the acts of those who did remove the items. *See id.*

### *Sufficient Evidence of Fraud?*

Next, Palacios asserted that the evidence was insufficient to prove he committed actual fraud. With that, we agree, given the nature of the fraud allegation.

Patel based her claim of fraud upon misrepresentations intentionally made to induce third-parties to act to her detriment. Again, the misrepresentations in question were not made to Patel but instead to police officers about who owned the house or to other unspecified third-parties who may have been influenced by them. This poses problems.

21

A claim of actual fraud encompasses, among other things, a material misrepresentation upon which the **complainant** relied to his or her detriment. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (describing the elements of fraud as including a material representation made with the intent that the other party act upon it, the party acted in reliance on it, and the party suffered injury). We find no evidence of Patel's relying upon a misrepresentation of Palacios or his compatriots to her detriment.[7] So, the evidence is legally insufficient to support the trial court's decision to allow Patel to recover damages for actual fraud. *See Hill*, 2018 WL 1770527, at *7.

### Sufficient Evidence to Support Trespass to Try Title?

We next address Palacios's contention that the evidence was legally insufficient to support judgment on the claim of trespass to try title. He believed this was so because "Patel presented no evidence at trial to establish her superior title" and "such proof was required to prevail on her pleaded claim of trespass to land." We overrule the issue.

To be honest, we are not quite sure what Palacios is actually arguing. It seems as though he suggests that the claim of trespass to try title and the action to quiet title had to be re-adjudicated at trial despite being resolved via a partial

---

[7]Patel did urge in her brief that "a cause of action for fraud may also be sustained if the Plaintiff can show that the Defendant's actions caused a third party to reasonably rely to the Plaintiff's detriment." Yet, she neither provided us with explanation nor legal authority supporting that terse comment.

22

summary judgment. To the extent that he so suggests, he is wrong. *See Thompson v. Curtis*, 127 S.W.3d 446, 449–50 (Tex. App.—Dallas 2004, no pet.). A legitimately entered partial summary judgment adjudicates the matters encompassed within summary judgment; we know of no authority mandating that they be re-litigated in a trial subsequently convened to resolve the remaining issues. More importantly, he cited us to no legal authority so holding.

On the other hand, he may be suggesting that Patel failed to establish her entitlement, as a matter of law, to summary judgment on the two claims, and because she did, it was encumbent upon her to establish superior title at trial. The problem with that concerns Palacios's utter lack of briefing targeted at the partial summary judgment. That is, he failed to provide us with either substantive argument or legal authority purporting to illustrate why or how the trial court erred in entering a partial summary judgment declaring Patel "the lawful owner of" the "improved residential real estate" at issue. And, it is not our obligation to provide the missing argument or authority for him. *Nat. Gas Clearinghouse v. Midgard Energy Co.*, 113 S.W.3d 400, 416 (Tex. App.—Amarillo 2003, pet. denied) (stating that an appellant has the duty to analyze and explain his contentions and that the reviewing court has no duty to create argument where none is provided). So, in effect, his notion that summary judgment was inappropriate was inadequately briefed and, therefore, waived. *See id.*

23

### *Sufficient Evidence to Support Action to Quiet Title?*

Turning to Palacios's argument concerning the action to quiet title, Palacios told us that such an action "is essentially the equivalent to a trespass-to-try-title action" and that it "is equitable in nature and does not contemplate an award of damages." Presumably, he used these contentions as a means of attacking the trial court's award of damages upon the claim. We sustain the issue.

The judgment provides that "[w]ith respect to the following causes of action; Trespass to Real Property, Conversion[,] Fraud, Negligence, Trespass to Try Title to Action, ***and Suit to Quiet Title*** asserted by Plaintiff . . . the Court finds in favor of said Plaintiff, and Plaintiff . . . Patel is entitled to recover the following amounts . . . actual and/or economic damages in the amount of $135,000.00." [Emphasis added.] As written, the decree can be read as possibly awarding damages to Patel upon her action to quiet title. This is problematic given that "a suit to quiet title will not support a recovery of damages." *Luce v. Singdahlsen*, 636 S.W.2d 571, 574 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.). So, to the extent that the trial court awarded Patel damages upon her suit to quiet title, it erred.

### *Sufficient Evidence to Support Joint and Several Liability*

Palacios next asserted that "the lack of pleading is fatal to Patel's recovery of a judgment holding [him] jointly and severally liable," and "[t]he lack of legally sufficient evidence to support imposing joint and several liability is also fatal" under chapter 33 of the Texas Civil Practice and Remedies Code. We overrule the issue.

As previously discussed, the issue of joint and several liability was tried by consent. So too did the trial court impliedly find that Palacios engaged in a civil conspiracy. Establishing that the defendants engaged in a civil conspiracy rendered each conspirator responsible for all acts done by any conspirator in furtherance of the conspiracy. *Lipsky*, 411 S.W.3d at 549. In other words, they are jointly and severally liable for the actual damages caused in furtherance of the conspiracy. *LandAm. Commonwealth Title Co.*, 2015 WL 6545685, at *11. Consequently, there is sufficient evidence to impose joint and several liability upon Palacios. *See Hill*, 2018 WL 1770527, at *7.

### Sufficient Evidence to Support Damages

Next, we address the contention that the evidence was legally insufficient to support the amount of actual damages awarded, that is, $135,000. Palacios believed the evidence legally insufficient because 1) there is no evidence that the cost estimates were reasonable, and 2) the evidence conclusively established that Palacios's conduct did not proximately cause the alleged damages. We sustain the issue in part.

Regarding causation, the argument is premised on the allegation that Palacios did not personally convert any personalty or damage any realty. This, however, does not take into consideration his joint and several liability as a conspirator. As such, he is responsible for the acts of any other conspirator done in furtherance of the conspiracy. So, it is inconsequential that the evidence may fail to illustrate that he did any damage or took any personalty himself.

25

As for the amount of damages awarded, we begin with observing the various causes of action for which damages may be awarded and the measure applicable to each. The first is conversion. Generally, the measure applicable to it is the fair market value of the property at the time of conversion, with legal interest. *Henson v. Reddin*, 358 S.W.3d 428, 436 (Tex. App.—Fort Worth 2012, no pet.). Alternatively, the measure of damages may be the actual value of the property to the owner at the time of loss if the converted personalty has no readily ascertainable fair market value. *Id.* Should that measure apply, then the purchase price of the items taken is probative evidence, even though it may not be enough to withstand a factual sufficiency attack. *Id.* at 437 (stating that "[t]estimony and evidence regarding purchase price, however, standing alone, is not factually sufficient to support a fair-market-value damages award or an actual-value damages award"). Incidentally, used or second-hand home furnishings (like those at bar) have been held to fall within the category of property having no readily ascertainable fair market value. *See Espronceda v. Espronceda*, No. 13-15-00081-CV, 2016 WL 3225860, at *5–6 (Tex. App.—Corpus Christi June 9, 2016, no pet.) (mem. op.) (so noting); *Wutke v. Yolton*, 71 S.W.2d 549, 551–52 (Tex. Civ. App.—Beaumont 1934, writ ref'd) (so noting).

As for trespass, the damages recoverable reflect the sum necessary to make the victim whole or place him in the position he would have been but for the trespass. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 921 (Tex. 2013). That sum includes the cost to repair any damage to the property, the

loss of use of the property, and the loss of any expected profits from the property's use. *Id.* When the trespass is knowing and intentional or malicious, other forms of damage may be recoverable. *Id.* at 922. For example, the victim may be awarded damages to recompense emotional distress or mental anguish when the trespass is willful and causes actual property damage. *Id.* Exemplary damages may also be awarded under certain circumstances. *Id.*

A similar measure to that of trespass applies in suits involving trespass to try title. *Id.* at 921. The damages available include lost rents and profits, damages for use and occupation of the premises, and damages for any special injury to the property. *Id.*

Having described the pertinent measures of damage, we turn to Palacios's argument concerning conversion. In making it, he referred to the evidence utilized by Patel to establish her loss, acknowledged that it consisted of what the items cost her two years earlier, and concluded that because she "presented no evidence that any of those costs were reasonable," the evidence was insufficient to establish her damages. Yet, as discussed above, the applicable measure of damages is not the reasonableness of an item's purchase price but either its fair market or actual value. About those actual, applicable measures, Palacios says nothing.

Instead, he would have us apply a measure utilized when recovering the cost of repairing damaged property. His references to the supreme court's opinion in *McGinty v. Hennen*, 372 S.W.3d 625 (Tex. 2012), and this court's opinion in *Fort*

27

*Worth Hotel Ltd. Partnership v. Enserch Corp.*, 977 S.W.2d 746 (Tex. App.—Fort Worth 1998, no pet.), illustrate as much. *See, e.g.*, *McGinty*, 372 S.W.3d at 627–28 (discussing whether the evidence was legally sufficient to sustain an award of remedial damages arising from a breach of a construction contract and specifying that, under the circumstances, the damages should be measured by the cost to complete or repair less the unpaid balance on the contract price); *Fort Worth Hotel Ltd. P'ship*, 977 S.W.2d at 762 (stating that "[a] party seeking recovery for the cost of repairs must prove their reasonable value"). We find no evidence of record suggesting that Patel recovered any of the stolen property, repaired it, and sought to recover damages for those repairs. She sought damages for the utter loss of her property. So, Palacios's effort to apply the wrong measure of damages to illustrate that they lacked sufficient evidentiary support is of no moment.

Regarding the damages relating to the claims of trespass and trespass to try title, the record indicates that two exhibits were offered into evidence purporting to illustrate the costs of repairing the damage to the home. Yet, neither exhibit was actually admitted into evidence by the trial court. Thus, neither may be considered by us in gauging the sufficiency of the evidence. *See Barnard v. Barnard*, 133 S.W.3d 782, 789 (Tex. App.—Fort Worth 2004, pet. denied) (stating that "[a]s a general rule, documents not admitted into evidence are not considered by an appellate court"); *see also Williams v. Williams*, No. 02-08-00033-CV, 2008 WL 5194227, at *6 (Tex. App.—Fort Worth Dec. 11, 2008, no pet.) (mem. op.) (holding that because the inventory and appraisement was not admitted into evidence, the

value of the horse named "Pflamenco" mentioned in it could not be considered as evidence of its value).

Nonetheless, Mr. Patel testified, without objection, to the cost of repairing the home and provided the trial court with a range of those costs. That range began at $85,000 and ended at $180,000. A building contractor also testified about the cost for repairing aspects of the house and the estimate he provided Patel. That estimate was $85,000. Other evidence revealed that the repairs encompassed repainting the entire interior of the home, repainting the home's exterior soffits and facia, repairing or replacing broken windows, repairing electrical outlets, repairing a bar, replacing 9,500 square feet of flooring, repairing sheetrock, and repairing the stairs. The contractor also stated that the repairs were "necessary" to make the house habitable. So too did he later reveal that 1) with regard to the flooring he was "talking about . . . updating what [he] think[s] needs to be replaced because of the age" or "obsolescence," and 2) his bid included the replacement of marble flooring that was in "good condition" or "pretty good shape" for about $2,800. But other than for the marble flooring none of the aforementioned repairs were assigned a particular repair or replacement cost. They were simply lumped into a general $85,000 estimate.

Mention was also made of replacing all seventy-three windows in the house and the possibility of obtaining replacements of like kind and quality as those initially installed. The cost of doing that approximated $60,000. From the context of what the contractor said, the replacement included more than just the glass; it

encompassed substituting entire windows—frame and all. Why each of the seventy-three needed replacement went unmentioned, though. Whether each was broken and, if so, whether Palacios or any of his compatriots broke them garnered no attention at trial.

As can be seen, a hodgepodge of repairs was being undertaken and for which Patel sought payment. Nothing indicated that Palacios and his compatriots damaged every item purportedly necessitating repair or replacement, though. For instance, no one described how they damaged the home's exterior soffits and facia or how their conduct required the replacement of all seventy-three windows and frames. Nor does any evidence indicate that their actions damaged all the interior walls or the paint on every interior wall and piece of molding.

More importantly, though, is the absence of evidence regarding the reasonableness of the costs involved. Admittedly, the contractor opined that the repairs were "necessary," but more was required. As said in *Hernandez v. Lautensack*, 201 S.W.3d 771 (Tex. App.—Fort Worth 2006, pet. denied), the claimant must "present sufficient evidence to justify a . . . finding that the costs were reasonable **and** the repairs necessary." *Id.* at 776–77 (emphasis added). While the contractor said that the repairs were necessary to make the home habitable, he said nothing about the reasonableness of his charges. And though neither he nor anyone else was obligated to utter the words "'reasonable and necessary,'" *id.* at 777, the evidence nevertheless had to be sufficient to enable one to rationally infer that the proposed costs were reasonable. We found no

30

evidence supporting such an inference. Mr. Patel simply alluded to a range of costs represented by estimates he received. So too did the contractor express an estimate of what he would charge for performing the repairs. From where either obtained their respective figures went unmentioned, as did whether the sums reflected costs normally charged by others for like repairs.

To the extent that Patel suggested the contractor's use of the phrase "like and kind" quality somehow filled the void, we note that the passage was used solely in reference to replacing all seventy-three windows by having them custom built. Those are the very windows to which we alluded when discussing the absence of evidence pertaining to causation.[8] That the contractor sought to replace entire windows that Palacios may not have damaged with windows of "like and kind" quality hardly permits one to rationally infer that whatever costs were attributed to replacing all flooring, repainting every wall within the home, repainting exterior fascia and soffits, and replacing sheet rock and the like were reasonable.

What we have here is little more than evidence of the amount a contractor would charge to perform repairs. But, proof of the amounts charged is not evidence that the amounts were reasonable. *See McGinty*, 372 S.W.3d at 627. Without more, we are unable to conclude that legally sufficient evidence appears

---

[8]Interestingly, the contractor also neglected to explain the basis underlying his estimate indicating that it would cost $60,000 to replace each window. Apparently, they would have to be custom built but whether that figure was related in any way to the cost of custom built windows or what custom builders would generally charge to make them is unknown.

of record to support an award of damages for trespass to try title and general trespass.

The problem before us now likens to what some would call a *Casteel* situation, that is, a situation wherein an award is comprised of both valid and invalid components. *See Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 388 (Tex. 2000) (op. on reh'g) (recognizing the presence of possible error when the jury is submitted a broad-form liability question incorporating both valid and invalid theories of liability), *abrogated on other grounds by Sky View at Las Palmas, LLC v. Mendez*, No. 17-0140, 2018 WL 2449349, at *7–8 (Tex. June 1, 2018). Though *Casteel* involved a jury trial, its reasoning also encompasses non-jury trials wherein the damage award commingled recovery under valid and invalid theories. *Nugent v. Estate of Ellickson*, 543 S.W.3d 243, 268 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (op. on reh'g). Furthermore, when such situations arise, they normally require reversal unless the reviewing court can be reasonably certain that the factfinder's decision was not significantly influenced by the inclusion of invalid grounds of recovery. *Id.*; *see also Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 227–28 (Tex. 2005) (involving a *Casteel* situation and holding that "unless the appellate court is 'reasonably certain that the jury was not significantly influenced by issues erroneously submitted to it,' the error is reversible" (footnote omitted)).

Here, we cannot but conclude that the trial court's cumulative damage award was significantly influenced by the assessment of damages unsupported by the evidence. For instance, the record contains evidence describing both the

32

particular household furnishings that were converted and the price Patel paid for each. As said in *Henson*, that price is some evidence of the actual value of the item taken. Adding them together gives us a sum approximating $26,633.86. The latter is obviously much less than the $135,000 awarded by the trial court "on the causes of action for Trespass to Real Property, Conversion[,] Fraud, Negligence, Trespass to Try Title to Action, and Suit to Quiet Title." So, we are reasonably certain that the trial court's damage finding was greatly influenced by the decision to award damages for which there was no evidentiary basis.

When there exists some evidence of damages but not enough to support the entire award, we may not render judgment. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 124 (Tex. 2009). The usual course of action in such situations is to assess the possibility of remittitur or remand for a new trial. *Id.* The circumstances leading us to conclude with reasonable certainty that harmful error occurred also indicates that the suggestion of remittitur is a viable course of action.

Thus, we suggest, under Texas Rule of Appellate Procedure 46.3, that the $135,000 award for damages be remitted by $108,366.14. Should the suggestion be accepted by Patel, the trial court's judgment will be modified by 1) reversing the sums awarded for both attorney's fees and exemplary damages; 2) denying the recovery of damages upon the causes of action for trespass to real property, fraud, negligence, trespass to try title, and suit to quiet title; 3) allowing recovery of damages upon the cause of action for conversion; 4) awarding "actual and/or

33

economic damages" for said conversion in the amount of $26,633.86; 5) awarding $2,774.36 as "prejudgment interest on such damages measured from November 17, 2012, at the rate of 5% per annum"; and 6) declaring Patel to be the true and sole owner of the realty in question. If the suggestion of remittitur is rejected by Patel, we will modify the judgment by 1) reversing the awards for attorney's fees, exemplary damages, "actual and/or economic damages," and prejudgment interest; 2) denying the recovery of damages upon the causes of action for trespass to real property, fraud, negligence, trespass to try title, and suit to quiet title; 3) declaring Patel to be the sole and true owner of the realty in question; and 4) reversing and remanding for new trial the causes of action of civil conspiracy and conversion.[9]

/s/ Brian Quinn

BRIAN QUINN
CHIEF JUSTICE

PANEL: SUDDERTH, C.J.; PITTMAN, J.; QUINN, C.J. (Sitting by Assignment).

SUDDERTH, C.J., filed a concurring opinion.

PITTMAN, J., concurs without opinion.

DELIVERED: June 7, 2018

---

[9]We cannot reverse for a new trial on damages when liability is disputed. *See* Tex. R. App. P*.* 44.1(b) (so stating). Palacios disputed his liability for conversion. And, because we determined that his liability for conversion was founded upon the theory of civil conspiracy and evidence of record indicates that he defended himself against all allegations of misconduct, that cause of action must also be retried upon rejection of remittitur.